**STATE of Missouri, Respondent,**

v.

**Anthony THOMPSON, Appellant.**

**No. 39667.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 24, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 15, 1979.

Application to Transfer Denied
Nov. 14, 1979.

Robert W. Meyers, James J. Knappenberger, C. Clifford Schwartz, Shaw, Howlett & Schwartz, Clayton, for appellant.

Paul Robert Otto, Kristie Green, Asst. Attys. Gen., John D. Ashcroft, Atty. Gen., Jefferson City, Daniel M. Buescher, Pros. Atty., Joseph R. Aubuchon, Asst. Pros. Atty., Union, for respondent.

REINHARD, Presiding Judge.

Defendant appeals from a conviction on the charge of Robbery in the First Degree. He was sentenced under the Second Offender Act to serve a term of five years in the Department of Corrections.

Linda Bockhaus, a waitress in the Skelly Station Restaurant in Pacific, testified that defendant arrived at the restaurant in a van, which she recognized as belonging to Randall Fryer. Defendant went into the restaurant, then returned to the van and sat on the passenger side for about thirty minutes. To Ms. Bockhaus, Thompson appeared drunk or stoned. According to John Norman, manager of the service station, the van then moved to the service station area and he went to the passenger side of the van. At that time he had $240 in receipts in his possession. He testified that defendant asked him: "How would you like to make a quick $100?" "Give me all your money and I will give you $100." Norman told him he could not do that. Defendant replied: "I can take it from you." According to Norman's testimony, defendant reached under his seat and while bent down half way said: "I've got a .45, give me your money." Norman handed over the receipts. He did not think defendant was drunk.

Defendant admitted taking the money from Norman. He said that he and several friends, including Fryer, had gone to a drive-in that evening and that he drank some beer. Defendant denied that he ever intended to rob Norman. He admitted to the conversation and to asking Norman if he wanted to make $100. Defendant testified that he told Norman he would split the money with him. He further testified that he was "joking"; however, he did not tell Norman that. After Norman refused to give him the money, he said: "I'll take it from you." He admitted that Norman then gave him the money and that he and Fryer left the station. Later he told Fryer that they had better take the money back, but that when they returned to the area the police were already there and they were frightened away.

Defendant first contends that the court erred in permitting Officer Zelch to testify as to a statement made by defendant. This testimony was offered in rebuttal and had originally been suppressed because of the failure of the officer to give Thompson the *Miranda* warnings prior to the statement.

■ At trial defendant testified that he was with Fryer earlier in the evening and that Fryer was with him when he took the money. On cross-examination, defendant stated he did not remember telling Officer Zelch that he had stayed at home on the night of the robbery and that he did not know Fryer. Officer Zelch testified that he did make this statement. Zelch's testimony was proper rebuttal to impeach defendant's credibility as a witness. When a witness denies or equivocates about a statement, it may be shown that he made a previous inconsistent statement, it may be shown that he made previous inconsistent statement. *Lewis v. Hubert,* 532 S.W.2d 860, 865–866 [2, 3] (Mo.App.1975); *Aboussie v. McBroom,* 421 S.W.2d 805, 807 [1, 2] (Mo. App.1967). The defendant was confronted with the statement; he responded that he did not remember having made the statement. Thus, a proper foundation had been laid for its admission.

■ Defendant's further argument that admission of the statement was improper because it had been suppressed must fail also. The *United States Supreme Court in Harris v. State of New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) held that an accused's prior statements inconsistent with his trial testimony are admissible to impeach his credibility, although the police had obtained the statements without giving the accused warnings required by *Miranda.*

■ Defendant next argues that the court erred in refusing his tendered instructions D, E and F which related to voluntary intoxication. He claims that he was thus denied "the theory of his defense." He recognizes that voluntary intoxication was not a defense to a criminal charge and could not be considered on the issue of specific intent at the time of his trial. *State v. Richardson,* 495 S.W.2d 435 (Mo. banc 1973); *State v. Hegwood,* 558 S.W.2d 378 (Mo.App. 1977). He asks us to apply a portion of the new criminal code (§ 562.076) retroactively. This we cannot do. Section 556.031 of the new code provides: "[t]he provisions of this code shall govern the construction and punishment for any offense defined in this code

and committed after the effective date hereof . . . . The provisions of this code do not apply to or govern the construction of and punishment for any offense committed prior to the effective date of this code . . . ." The effective date of the code is January 1, 1979.

Defendant further contends that the court erred in failing to grant a mistrial when the Prosecuting Attorney asked on voir dire: "And, like Mr. Schwartz said, is there anyone here who does not realize that because of the Fifth Amendment no defendant need ever prove anything?"

■ The trial court denied defendant's request for a mistrial but instructed the jury to disregard this question. Defense counsel on voir dire had previously stated to the jury that they might feel that defendant had to prove his innocence. He stated that the defendant need not prove anything. Section 546.270, RSMo.1969 and Rule 26.08 forbid the state to comment on a defendant's failure to testify. In *State v. Scott,* 560 S.W.2d 879 (Mo.App.1977) the prosecutor on voir dire had asked the following question: "You are all aware of the Fifth Amendment to our constitution that a person has a right, and [sic] absolute right not to testify, and as a result of electing to use that right, his decision to do so you may not make any assumption based on that. You may not draw any unfavorable conclusions as to what were the causes of a man choosing not to testify. Is there anyone who doesn't understand or who can't agree with that[?]" The defendant objected and the court overruled the objection. The reviewing court there found no prejudicial error in the court's failure to grant a mistrial. The comment in the instant case is much less direct than the remark in *Scott* and says little more in regard to proof than what defendant's counsel had previously stated. The court here instructed the jury to disregard the comment. Furthermore, the defendant took the stand in this case. We find no error here.

■ During voir dire, the Prosecuting Attorney asked the jury: "Is there anyone

here who would expect me to be able to prove the defendant is [sic] guilty to a one hundred per cent total absolute certainty?" Defendant contends that this was an improper comment on reasonable doubt. We disagree. The court overruled defendant's objection. We find no prejudicial error here.

■■ Defendant alleges that the court should have sustained his motion for judgment of acquittal claiming that there was no evidence that *violence* was directed to Norman and no evidence that he was put in immediate fear of injury to himself. This point is without merit. Defendant was charged under § 560.120, RSMo.1969. The basic elements of the crime charged are the taking of property, by violence to the person, or by putting the person in fear of some immediate injury to his person. See *State v. Reynolds,* 521 S.W.2d 486 (Mo.App. 1975). We disagree that there was *no* evidence that Norman gave up the property because he was placed in fear of immediate injury to his person. Norman testified that he initially refused to give the money to the defendant. Defendant then reached down in the van, came back about half way up to a sitting position and said he had a .45 pointed at Norman. Norman said defendant appeared to be serious. He was not going to argue with anyone who had a gun, and that is why he gave up the money. This evidence alone was sufficient to sustain the conviction.

■■ Defendant further contends in this point that the court erred in failing to instruct on Robbery Second Degree and Stealing Property of a Value of at Least $50. In his argument he makes no further reference to the failure to instruct on Robbery Second Degree, and the only reference on failure to instruct on Larceny is the citation to a case, *State v. Herron,* 349 S.W.2d 936 (Mo.1961). *Herron* holds as do many other cases, that if there is substantial evidence in a First Degree Robbery case to support an instruction on Stealing the court is required to give such instruction. Robbery in the Second Degree is committed when the property is relinquished through a threat that injury may be inflicted at some different time. § 560.125 RSMo.1969. There is no evidence in the instant case supporting this lesser charge. Defendant points to no evidence which supports the giving of an instruction on Stealing. There is none. Defendant's testimony in a large degree corroborates that of Norman. He testified that he told Norman: "Hey, you want to make a hundred bucks?" Give me the money and I'll split it with you . ." Norman said: "No, you can't do that, no." Defendant said: "I'll take it from you." On cross-examination, defendant admitted that he was trying to "shake Norman up." Although defendant denied he had a gun, his testimony shows that Norman refused to give him the money until defendant said: "I'll take it from you."; that is, while he was seriously trying to "shake Norman up." This evidence supports the statement that Norman gave up the money because of present fear and does not support an instruction on Stealing.

Judgment affirmed.

GUNN and CRIST, JJ., concur.