No. 91,833

STATE OF KANSAS, *Appellee*, v. CHRISTY EDGAR, *Appellant*.

(127 P.3d 986)

Opinion filed February 10, 2006.

*Jessica R. Kunen,* of Lawrence, argued the cause and was on the brief for appellant.

*Paul J. Morrison,* district attorney, argued the cause, and *Steven J. Obermeier,* assistant district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: Christy Edgar (Edgar) pled guilty to first-degree felony murder and two counts of abuse of a child. Edgar then sought to withdraw her plea before she was sentenced. The trial court denied her motion.

Edgar appeals from this ruling, arguing the trial court abused its discretion when it denied her motion to withdraw her plea. More specifically, she argues: (1) her plea was not knowingly and voluntarily made because the court did not inform her she was waiving her right to appeal the trial court's ruling on a pretrial motion for severance of her trial; (2) the trial court violated K.S.A. 2004 Supp. 22-3210(a)(4) by failing to inquire of her regarding the factual basis for the plea; and (3) the trial court violated K.S.A. 2004 Supp. 22-3210(a)(2) by not adequately explaining the maximum penalty which could be imposed. We conclude the trial court did not abuse its discretion in denying the motion to withdraw the plea.

*Facts and Procedural History*

Edgar and two codefendants, Neil Edgar and Chasity Boyd, were charged with the same crimes under separate complaints. Count I of the complaint against Edgar charged felony murder, in violation of K.S.A. 21-3401, occurring during the commission of

abuse of a child by inflicting cruel and inhuman corporal punishment upon Brian Edgar. Counts II and III charged child abuse, in violation of K.S.A. 21-3609, arising from inflicting cruel and inhuman corporal punishment upon Martez and Christina Edgar, respectively, during the time period from May 9, 2002, to December 30, 2002.

A preliminary hearing was conducted on April 17, 2003. Edgar's adopted son, Christon, testified that Edgar and her husband, Neil, adopted Christon, Martez, and Christina, who were biological siblings, in 1997. They adopted Brian a year or two later. At the time of the hearing, Christon was 16 years old, Martez was 12, and Christina was 10. Brian was 9 years old when he died. Chasity Boyd was the Edgars' babysitter and would sometimes stay with the family.

Christon testified that on Saturday, December 28, 2002, Brian was disciplined for stealing food by being bound with duct tape "like a mummy" from his feet to his shoulders, having a sock stuffed in his mouth, and being placed in a room in the basement. The next day, the whole family spent the day at the church where his father was the pastor and his mother was the copastor and evangelist. That evening, when Christon and his father came home, Edgar, Boyd, and Brian were already there. Brian was again wrapped in tape, this time from his legs to his stomach.

Apparently, the plan was to fully tape Brian like a mummy as punishment for having stolen cookies at church. However, upon reaching Brian's stomach, Edgar and Boyd ran out of tape. Edgar and Neil went to the store and purchased more tape and then returned home. Edgar and Boyd stuffed a sock in Brian's mouth and finished taping Brian, taping over his mouth and nose leaving only enough exposed so he could breath through his nostrils. Boyd then put Brian in a small room underneath the basement stairs where he was left for the night on a sleeping bag placed on the concrete floor.

Christon was awakened early the next morning when his mother told him his father had taken Brian to the hospital because he was not breathing. The physician who attempted to treat Brian at KU Medical Center testified that medical personnel were unable to

resuscitate Brian because rigor mortis had already set in, indicating he had been dead for a while. An autopsy revealed that Brian died of asphyxiation when he aspirated his own vomit because his mouth and airway were obstructed. There was adhesive material on Brian's head, and there were abrasions in various stages of healing on Brian's extremities, mostly around his wrists and ankles, which the medical examiner considered evidence of abuse.

Investigators noticed that Martez and Christina also had injuries around their wrists similar to Brian's injuries. Christina told a detective that Boyd had tied both Martez and herself with electrical ties at the direction of their mother, Christy Edgar. Another witness testified that she had previously heard Edgar tell Boyd to tie up the children and had seen them tied up.

At the conclusion of the preliminary hearing, all of the defendants were bound over for trial. Subsequently, Edgar filed a motion to sever her trial from that of her codefendants. The trial court denied Edgar's motion for severance, ruling that she had failed to establish that the codefendants had antagonistic defenses or that a joint trial would result in actual prejudice.

On the first day of trial, Edgar participated in the voir dire. Then, before opening statements, Edgar indicated she wanted to plead guilty to all three charges. The trial judge met with Edgar and her attorney in chambers. At the suggestion of Edgar's attorney, the trial court agreed to appoint a second attorney to advise Edgar before she made a final decision. Later that morning, Edgar renewed her motion for severance, which was denied. Opening statements were conducted after which Edgar's attorney, outside the presence of the jury, announced that Edgar had decided, against the advice of counsel, to plead guilty.

At the request of Edgar's attorney, the court held another ex parte hearing in chambers where Edgar's attorney asked Edgar a series of questions. Edgar indicated that she did not want a trial because her defense would implicate family members. She repeatedly stated that she could not fight her family. When her attorney asked her if she was going to enter the guilty plea because she was guilty, she responded, "I won't make a comment. There's other cases going on that's tied to this case."

The trial judge also asked her several questions, including whether she understood that, if she pled guilty, she would be waiving her privilege against self-incrimination and might be compelled to testify in the trial of her husband and Boyd. Edgar indicated she would refuse to testify, since she was already going to prison anyway. The court explained that it could rely on the evidence introduced at the preliminary hearing to support the plea. The court also explained that the sentence for first-degree murder is life in prison without the possibility of parole for at least 20 years and that on the other two counts the sentence could be 31, 32, or 34 months.

The parties then returned to the courtroom for further proceedings. The court reviewed the charges and possible penalties with Edgar. Edgar indicated she understood that the penalty for felony murder was life in prison with no possibility of parole for 20 years. She also understood that the sentencing range for the two severity level 5 felonies was 31, 32, or 34 months. The court also explained that "these sentences can run together or they could run consecutive to each other."

In response to additional questions asked by the trial court, Edgar indicated she understood that a jury had been empaneled, that her attorney was ready to try her case, and that if she proceeded to trial, she would be presumed innocent until proven guilty. The court advised Edgar and she indicated she understood that, by pleading guilty, she was giving up the right to a jury trial, the right to confront and cross-examine the witnesses against her, the right to call witnesses on her own behalf, the right to testify, and the right to appeal an adverse outcome. Edgar indicated that no one had threatened or coerced her to change her plea; in fact, her attorney had counseled her against it.

Edgar agreed that the State had witnesses who would testify at trial as they had at the preliminary hearing. The court found that, based on the preliminary hearing evidence, there was sufficient evidence to find Edgar guilty of all three charges. The court then reviewed the complaint with Edgar, and she stated she wished to change her plea to guilty on each charge. The court found Edgar was competent, had time to think and had thought about her de-

cision, had fully and completely discussed her decision with her attorney, and understood the effect of a guilty plea. The court found Edgar's plea was voluntarily and knowingly made and was supported by the factual basis of the State's opening statement and the evidence presented at the preliminary hearing. The court then found Edgar guilty on all three counts.

Before sentencing, Edgar filed a motion to withdraw her plea. The trial court denied Edgar's motion. The court then sentenced Edgar to life imprisonment with parole eligibility after 20 years on the felony-murder conviction and 32 months' imprisonment on each of the child abuse convictions. The court ordered the child abuse sentences to run concurrent with each other but consecutive to the life sentence.

*Framework for Reviewing a Motion to Withdraw Plea*

K.S.A. 2004 Supp. 22-3210(d) allows for the withdrawal of a guilty plea "in the discretion of the court." If the request is made before sentencing, the plea may be withdrawn for "good cause shown"; if the request is made after sentencing, the plea may be withdrawn "to correct manifest injustice." In this case, the good cause shown standard applies because Edgar filed her motion before she was sentenced.

In exercising its discretion under K.S.A. 2004 Supp. 22-3210(d), the trial court should evaluate whether "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. [Citation omitted.]" *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 (2001). Edgar's arguments generally assert that her plea was not understandingly made.

The question of whether a plea is understandingly made must be weighed in light of certain constitutional and statutory requirements which attach to a defendant's plea. United States constitutional due process requirements relating to pleas of guilty or nolo contendere were imposed upon the States in *Boykin v. Alabama*, 395 U.S. 238, 242-44, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). To be constitutionally valid, guilty pleas and their resulting waiver of rights "not only must be voluntary but must be knowing, intelligent

acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1975). A keystone of an intelligent plea is for the defendant to be informed of the nature of the charges. *Smith v. O'Grady,* 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941); see *McCarthy v. United States,* 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). Additionally, the defendant must be informed of the "[s]everal federal constitutional rights . . . involved in [the] waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination [Citation omitted.] . . . . Second, is the right to trial by jury. [Citation omitted.] Third, is the right to confront one's accusers. [Citation omitted.]" *Boykin,* 395 U.S. at 243. The *Boykin* Court explained that a waiver of rights cannot be presumed from a silent record. 395 U.S. at 243. Thus, "the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady,* 397 U.S. at 747-48 n.4.

K.S.A. 2004 Supp. 22-3210(a) embodies these due process requirements (*Trotter v. State,* 218 Kan. 266, 268-69, 543 P.2d 1023 [1975]) and adds statutory conditions precedent to a plea of guilty or nolo contendere being accepted:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea."

A failure to strictly comply with the requirements of K.S.A. 2004 Supp. 22-3210(a) may be harmless error if a review of the entire record shows the guilty plea was knowingly and voluntarily made. *Trotter,* 218 Kan. at 269 ("While we do not approve of any failure

to comply strictly with the explicitly stated requirements of K.S.A. 22-3210, it does not follow that every deviation therefrom requires reversal."). Conversely, a failure to comply may be good cause for granting a motion to withdraw if the noncompliance results in the defendant not understanding the nature of the charge or the consequences of entering the plea. See K.S.A. 2004 Supp. 22-3210(a)(3) and (d); *Bey*, 270 Kan. at 545.

On appeal, the trial court's decision to deny a motion to withdraw a plea will not be disturbed absent a showing that the court abused its discretion. The defendant bears the burden of establishing such an abuse of discretion. *Bey*, 270 Kan. at 545-46. Judicial discretion will vary depending upon the character of the question presented for determination. Generally, the trial court's decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards. However, an abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 779, 89 P.3d 908 (2004); see *State v. Richard*, 252 Kan. 872, 881-82, 850 P.2d 844 (1993).

## Motion for Severance

Edgar first argues that the trial court abused its discretion in denying her motion to withdraw her guilty plea because the court had not informed her that if she entered the plea she could not appeal the trial court's ruling on the motion for severance. According to Edgar, it was not sufficient that the trial court asked her if she understood that she was giving "up the right to appeal an adverse outcome." The State responds that the trial court informing Edgar that she was giving up the right to appeal "an adverse outcome" was sufficient to encompass any adverse pretrial rulings.

In constructing this argument, Edgar begins with the premise that she lost the right to appeal any pretrial issues upon pleading guilty. Given this loss of her ability to appeal, she believes she was entitled to a specific caution.

We agree with Edgar that she waived her right to appeal the denial of her motion to sever. K.S.A. 2004 Supp. 22-3602(a) provides: "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or *nolo contendere,* except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507." The right to appeal is entirely statutory and not a constitutional right granted by either the Kansas or the United States Constitutions. *State v. Legero,* 278 Kan. 109, 111, 91 P.3d 1216 (2004). The effect of K.S.A. 2004 Supp. 22-3602(a) is that there is no statutory right to appeal a conviction after entering a plea. As a result, an accused who enters a voluntary plea of guilty "waives any defects or irregularities occurring in any of the prior proceedings. [Citations omitted.] This is so even though the defects may reach constitutional dimensions." *State v. Melton,* 207 Kan. 700, 713, 486 P.2d 1361 (1971) (claim convictions were result of involuntary confessions or illegal searches waived by guilty plea); see also *Young v. State,* 206 Kan. 318, 319, 478 P.2d 194 (1970) (claim that no probable cause existed for issuance of arrest warrant waived by guilty plea); *Dexter v. Crouse,* 192 Kan. 151, 153, 386 P.2d 263 (1963) (conviction cannot be challenged based on claim of illegal search and seizure when defendant voluntarily pled guilty); *Greenwood v. State,* 30 Kan. App. 2d 870, 872, 50 P.3d 105 (2002) (defendant's collateral attack claiming his conduct did not violate statute was waived by guilty plea).

While Kansas courts have not specifically addressed whether a defendant who pleads guilty waives the right to appeal the denial of a motion for severance, other courts have so held. See, *e.g., United States v. McNeely,* 20 F.3d 886, 887-88 (8th Cir. 1994) (after entry of valid guilty pleas, defendants could no longer raise issue concerning district court's failure to sever trial of post office robbery charge from bank robbery charge; plea results in waiver of nonjurisdictional defects and defenses); *People v. Turner,* 171 Cal. App. 3d 116, 125-27, 214 Cal. Rptr. 572 (1985) (guilty pleas waive most pretrial rulings including denial of severance); *People v. Gray,* 102 Ill. App. 2d 129, 133-34, 243 N.E.2d 545 (1968) (by pleading guilty, defendant waived motions to suppress evidence

and for severance and separate trial); *Johnson v. State*, 753 So. 2d 449, 455 (Miss. App. 1999) (defendant's guilty plea waived claim that trial court should have granted his motion for severance based on argument that codefendant was coerced into signing affidavit that made incriminating statements against him); *People v. Jackson*, 288 App. Div. 2d 939, 732 N.Y.S.2d 524 (2001) (defendant's guilty plea to multiple charges waived his contention that court erred in denying his severance motion); *Hill v. State*, 478 S.W.2d 923, 924 (Tenn. Crim. App. 1971) (defendant's plea of guilty waived claim of error in trial court's denial of motion for severance).

These cases are in accord with the general rule in Kansas that a plea is a waiver of all defects or irregularities in the proceedings prior to the plea. Thus, the premise upon which Edgar constructs her argument is correct.

However, we do not agree with her contention that the trial court was required to caution her that her guilty plea resulted in a waiver of her right to appeal a specific pretrial ruling. Edgar cites three cases to support her argument. None do so. In the first case, *State v. Larry*, 252 Kan. 92, 843 P.2d 198 (1992), *modified by State v. Solomon*, 257 Kan. 212, Syl. ¶ 2, 891 P.2d 407 (1995), the defendant appealed the trial court's denial of his motion to withdraw his plea, arguing that the trial judge should have informed him that (1) he had the right to appeal any erroneous trial rulings, and (2) by pleading guilty he was waiving that right. Had he known this, Larry argued, he would not have entered a plea.

Although this court considered the propriety of the trial court's pretrial ruling refusing to allow Larry's witnesses to testify rather than simply ruling that any error was waived by the guilty plea, the court did not decide the issue of whether the trial judge should have informed Larry that he was waiving any right to appeal adverse trial rulings. See 252 Kan. at 94-95. Thus, the *Larry* decision, while ambiguous, does not directly support Edgar's argument in this case.

The other cases cited by Edgar to support her argument are *State v. Rodriguez*, 254 Kan. 768, 869 P.2d 631 (1994) (*Rodriguez I*), and *State v. Rodriguez*, 261 Kan. 1, 927 P.2d 463 (1996) (*Rodriguez II*). In *Rodriguez I*, the defendant pled guilty after being

erroneously advised by the trial court that he could still appeal the court's ruling on a speedy trial issue. When the defendant attempted to appeal the speedy trial issue, this court ruled the defendant had waived the issue by pleading guilty. However, the court also noted that the defendant could attempt to have his guilty plea set aside. *Rodriguez I*, 254 Kan. at 775.

In *Rodriguez II*, the defendant moved to withdraw his guilty plea. In discussing its prior ruling in *Rodriguez I*, the *Rodriguez II* court said: "[W]e did not mean to imply that Rodriguez would be entitled to set aside his plea by a mere showing that the trial judge misinformed him about his right to appeal the speedy trial issue." 261 Kan. at 2. Again, the court examined the merits of the pretrial ruling, which it found lacking. 261 Kan. at 2-4. Edgar argues that, in contrast, her argument has merit. Because K.S.A. 2004 Supp. 22-3602 does not predicate the waiver of the ability to appeal on the merits of the issue, the lack or presence of merit is not a distinguishing factor. For a discussion regarding a codefendant's motion for severance, see *State v. Boyd*, 281 Kan. 70, 77-90, 127 P.3d 998 (2006). However, *Rodriguez II* is distinguishable. In this case the trial court did not erroneously inform Edgar that she could appeal the court's denial of her motion for severance. *Rodriguez II* did not hold that the trial court should have informed the defendant that he could not appeal the speedy trial issue; rather, it only held that any error in the court's misinforming the defendant that he could appeal the speedy trial issue was harmless. 261 Kan. at 4-5. Thus, *Rodriguez II* does not support Edgar's argument here.

We are not persuaded that the requirement that a plea must be made "understandingly" means the trial court must list for an accused all the rulings that preceded a plea and specifically state there is no right to appeal those rulings. See *Stevens v. State*, 202 Ga. App. 473, 474, 414 S.E.2d 702 (1992) (not error to fail to inform accused that guilty plea resulted in waiver of right to appeal motion to suppress). This is especially true where, as in this case, the accused was informed that she was waiving her right to appeal an adverse outcome.

The trial court did not abuse its discretion in determining that Edgar had not shown good cause to withdraw her plea when her request was based upon the fact that the trial court had not specifically informed her that she would not have a right to appeal the denial of the motion for severance if she entered a plea of guilty.

## Factual Basis for the Plea

Next, Edgar argues that her guilty plea must be set aside because the trial court failed to inquire of her regarding the factual basis for her plea in this case.

Pursuant to K.S.A. 2004 Supp. 22-3210(a)(4), the court may accept a plea when "the court is satisfied that there is a factual basis for the plea." To make this determination, "the trial court must establish that all elements of the crime charged are present." *Bey*, 270 Kan. at 546. According to Edgar, these requirements were not satisfied in this case.

First, Edgar argues she never admitted guilt. She points to the transcript of the in camera hearing where she declined to comment when her counsel asked if she was guilty. Edgar also notes that the trial court did not inquire of her regarding the factual basis for the plea other than to ask her if she agreed that the State could present the evidence introduced at the preliminary hearing. She submits that this stipulation was not sufficient to satisfy the requirement of K.S.A. 2004 Supp. 22-3210(a)(4). To support her argument, Edgar cites *State v. Snyder*, 10 Kan. App. 2d 450, 456, 701 P.2d 969 (1985), which held that the parties' stipulation to the factual basis for a plea was insufficient where the court had not satisfied *itself* that there was a factual basis for the plea.

As the State points out, there is no requirement that a defendant provide the factual basis for the plea by admitting guilt. Rather, as stated in *State v. Shaw*, 259 Kan. 3, Syl. ¶ 6, 910 P.2d 809 (1996):

"A factual basis for a plea may be satisfied by a complaint or information given or read to the defendant which sets forth the factual details and essential elements of the particular crime charged, by the evidence presented to the court by the prosecutor, by a statement of facts made by the defendant at the hearing, *or if the judge accepting the defendant's plea conducted the defendant's preliminary examination*." (Emphasis added.)

In this case, the same judge who accepted Edgar's plea presided over her preliminary hearing. That judge concluded that, if the State presented the same evidence at trial as it presented at the preliminary hearing, the evidence would be sufficient to support Edgar's conviction on all three charges. Edgar agreed that the State had such evidence. Thus, the trial court properly found there was a factual basis for the plea. See *State v. Wright*, 7 Kan. App. 2d 631, 637, 646 P.2d 1128 (1982) (trial judge present at preliminary hearing and satisfied there was factual basis for plea).

Edgar also argues that the trial court may accept a guilty plea from a defendant claiming innocence, but only if there is "strong evidence of actual guilt." See *Clinkingbeard v. State*, 6 Kan. App. 2d 716, 719, 634 P.2d 159 (1981) (quoting *North Carolina v. Alford*, 400 U.S. 25, 37, 27 L. Ed. 2d 162, 91 S. Ct. 160 [1970]).

Again, we reject Edgar's argument. The requirement that a trial court must satisfy itself that a sufficient factual basis supports the guilty plea is imposed by K.S.A. 2004 Supp. 22-3210(a)(4). The requirement is not constitutionally imposed. See *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995); *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir.), *cert. denied* 508 U.S. 977 (1993). The Sixth Circuit Court of Appeals has rejected the same argument made here by Edgar, concluding there was no requirement that there be strong evidence of guilt even when a defendant either "(1) affirmatively protests his innocence or (2) refuses to admit to acts constituting a crime; that is, either of the two possible *Alford*-type guilty pleas." *Tunning*, 69 F.3d at 111. The Fourth Circuit Court of Appeals is in accord. See *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990). The Ninth Circuit Court of Appeals has determined that "[i]f a defendant enters a guilty plea *while continuing to assert his innocence*, the district court may accept [the guilty plea] if there is 'a strong factual basis.' " (Emphasis added.) *United States v. Alber*, 56 F.3d 1106, 1110 (9th Cir. 1995) (citing *Alford*, 400 U.S. at 37-38). This requirement of "strong evidence" enables a court to determine that the defendant's guilty plea is voluntary and therefore not constitutionally infirm. See *Higgason*, 984 F.2d at 207-08.

Since there is not a constitutionally imposed standard for the weight of the evidence, the standard is that set in K.S.A. 2004 Supp. 22-3210(a)(4), which requires the court accepting the plea to be "satisfied that there is a factual basis for the plea." The statute leaves it to the court's determination whether the evidence is sufficient to establish the elements of the crime and satisfy the court that the plea is voluntary. If a defendant is continuing to protest innocence, the trial court, in the exercise of its discretion, may not consider the plea voluntary if the evidence is not strong. That judgment is left to the court's discretion and our standard of review is abuse of discretion. See *State v. Sanchez-Cazares*, 276 Kan. 451, 454-56, 78 P.3d 55 (2003).

In this case, during the in camera hearing Edgar refused to state whether she was guilty. However, she did not assert her innocence. She merely noted, "There's other cases going on that's tied to this case." At the plea hearing, she entered a plea of guilty and made no indication of innocence. Additionally, the evidence introduced at the preliminary hearing established the elements of the crimes upon which she was convicted and the crimes were supported by strong evidence of Edgar's guilt. Edgar's oldest child, Christon, testified that Edgar participated in taping Brian on the night he died. A detective testified that Christina told him that Boyd had tied her and her brothers with plastic ties at the direction of their mother. Another witness testified that she had previously heard Edgar tell Boyd to tie up the children and had seen the children in restraints. Brian, Martez, and Christina all bore physical scars from having been restrained.

The trial court did not abuse its discretion when it rejected Edgar's argument that there was not a factual basis for the plea.

### Consecutive Sentences

Edgar also complains that the trial court did not adequately inform her of the maximum penalty she could receive. K.S.A. 2004 Supp. 22-3210(a)(2) provides that the trial court may accept the plea when "in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines [severity] level . . ., and of the maximum penalty pro-

vided by law." In this case, the trial court explained the penalties to Edgar as follows:

"THE COURT: And you understand that you are charged in Count I with what is known as felony murder?

"THE DEFENDANT: Yes.

"THE COURT: And that the sentence, if you're convicted of that crime, is life in prison?

"THE DEFENDANT: Yes.

"THE COURT: And there's no possibility of parole for 20 years?

"THE DEFENDANT: Yes.

"THE COURT: And that you're charged in Count II and Count III with [severity] level 5 person felonies?

"THE DEFENDANT: Yes.

"THE COURT: Which are abuse of a child relating to Christina and Martez. Do you understand that? Those charges?

"THE DEFENDANT: Yes.

"THE COURT: And that if you're convicted of those two counts, the sentencing range is dependent upon your criminal history but your attorney and you believe that you have no criminal history.

"THE DEFENDANT: I have none.

"THE COURT: And that if that is true, your sentence would be 31, 32, or 34 months?

"THE DEFENDANT: Yes.

"THE COURT: That's from a sentencing guideline. Have you looked at that with your attorney and talked to him about that?

"THE DEFENDANT: Yes.

"THE COURT: That's with regard to Counts II and III. Now you understand that these sentences can run together or they could run consecutive to each other. Do [you] understand that?

"THE DEFENDANT: Yes, sir."

Edgar argues that the trial court's wording was confusing, suggesting that the total sentence for both counts II and III combined was 31, 32, or 34 months. She also contends the court informed her only that the sentences on counts II and III could run consecutive to each other but not that they could run consecutive to the sentence on count I, the felony-murder charge.

Although the trial court's comments were ambiguous, the court's comments cannot be construed in the manner Edgar suggests because both of the above contentions cannot be true. In telling Edgar that "these sentences can run together or they could run con-

secutive to each other," the trial court was clearly referring to sentences, plural. If the court was referring to only counts II and III, the court's comments imply that a 31-, 32-, or 34-month sentence would apply to each individual count; otherwise, no comment on consecutive versus concurrent sentences would have been necessary. If not, then the court was referring to the sentences on counts I, II, and III, contrary to Edgar's contention.

Additionally, Edgar was informed that the sentence for felony murder was life imprisonment. During the hearing in chambers, defense counsel asked Edgar, "Do you know what is going on, do you know if you plead guilty, in my opinion, you will spend the rest of your life in prison? You know that?" Edgar answered, "Yes." Life is the maximum term, K.S.A. 2004 Supp. 21-4706(c); see *State v. Conley*, 270 Kan. 18, 33, 11 P.3d 1147, *cert. denied* 532 U.S. 932 (2000), and no matter how Edgar's sentences were run, they could not have exceeded that term. Thus, Edgar was informed of the maximum possible prison term that could result from her plea.

Edgar also complains that the trial court did not inform her that her sentences for counts II and III would begin to run only when she was actually granted parole on the felony-murder sentence, not when she became parole eligible in 20 years. See K.S.A. 2004 Supp. 21-4720(b)(2). However, this court has held that a trial court accepting a guilty plea is not required to advise a defendant regarding future parole eligibility. See *Hicks v. State*, 220 Kan. 279, 283, 552 P.2d 889 (1976). Accordingly, a court cannot be required to advise a defendant that he or she may not actually be granted parole upon eligibility or that a consecutive sentence will begin to run only upon the granting of parole on the primary sentence. Also, Edgar was informed that her sentences could be run consecutively.

Under these circumstances, Edgar has failed to show that her guilty plea was unknowingly or involuntarily made. The trial court did not abuse its discretion in denying Edgar's motion to withdraw her plea.

Affirmed.