NOT DESIGNATED FOR PUBLICATION

No. 122,320

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES WESTON III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court, MICHAEL GROSKO, judge. Opinion filed May 14, 2021. Conviction affirmed, sentence vacated, and case remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., GARDNER and WARNER, JJ.

PER CURIAM:  A district court convicted James Weston of aggravated robbery in March 2013. His criminal history score included several out-of-state convictions, two of which were second-degree robbery convictions from Missouri. When Weston found out that his criminal history score was higher than he had anticipated, he moved to withdraw his plea. The district court denied Weston's motion and sentenced him to 198 months' imprisonment. Weston appeals. Because the district court erroneously categorized Weston's 1998 Missouri convictions as person felonies, we reverse and remand for correction of his sentence. But the district court did not abuse its discretion by denying Weston's motion to withdraw his plea, so we affirm his conviction.

1

*Factual and Procedural Background*

In September 2012, James Weston robbed a woman of her purse using a semi-automatic handgun and physical force. He pleaded guilty to aggravated robbery, a severity level 3 person felony, in March 2013. In exchange for his plea, the State agreed to recommend an 18-month downward durational departure from the standard sentence of the appropriate guideline sentencing range.

At his plea hearing, Weston provided appropriate responses during his plea colloquy, including that he understood his plea and he was not under the influence of drugs and alcohol. The district court accepted Weston's plea and found him guilty of aggravated robbery.

But the presentence investigation (PSI) report later showed a higher criminal history score than either party had anticipated. The PSI categorized Weston's two previous Missouri second-degree robbery convictions as person felonies, increasing Weston's criminal history score to a B. Shortly after the PSI was released, Weston moved to appoint new counsel. During the hearing on that motion, Weston told the district court he was unhappy with his counsel and wanted to withdraw his plea. The district court ultimately appointed new counsel, KiAnn McBratney, who then moved to allow Weston to withdraw his plea.

During the plea withdrawal hearing, McBratney argued several reasons why the district court should allow Weston to withdraw his plea. The State countered that the plea was knowingly and voluntarily made because Weston confirmed to the court that he had read, understood, and reviewed the plea with his attorney before signing it. Weston also said that he had understood everything that went on during the plea hearing. The district court found Weston failed to show good cause to withdraw his plea, so it denied Weston's motion.

Weston now appeals. Although there was a considerable delay in docketing Weston's appeal, it is properly before this court for consideration. See Supreme Court Rule 2.04 (2021 Kan. S. Ct. R. 15). Weston was not at fault for the filing delay, and this court allowed Weston to docket his appeal out of time.

*Did the District Court Err by Finding Weston's Two Prior Missouri Second-degree Robbery Convictions Were Person Felonies?*

Weston first argues that the district court imposed an illegal sentence by categorizing his 1998 Missouri second-degree robbery convictions as person felonies in determining his criminal history score. He contends that the Missouri statute criminalizes a broader range of conduct than the comparable Kansas offenses, so the district court should have categorized his prior convictions as nonperson felonies.

*Standard of Review*

Whether a sentence is illegal under K.S.A. 2020 Supp. 22-3504 is a question of law over which appellate courts have unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). A court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 2020 Supp. 22-3504(a). A defendant may challenge an illegal sentence even for the first time on appeal. Thus, a preservation analysis is unnecessary. See *State v. Fisher*, 304 Kan. 263, 264, 373 P.3d 781 (2016).

*Analysis*

Weston argues that Kansas and Missouri differ in defining the offense of robbery. He contends that Kansas robbery does not include a person's use of force to affect an escape with peacefully taken property, but Missouri's robbery statute does.

3

The State concedes that our courts have not decided the "timing of force" argument Weston raises here. Thus the State relies on a general holding by a panel of this court that the elements of the Missouri second-degree robbery statute are "more specific" than the Kansas elements for robbery. See *State v. Ziegler*, No. 118,213, 2018 WL 4517523, at *1, 4 (Kan. App. 2018) (unpublished opinion) (finding that the Missouri robbery statute is narrower than Kansas' statute because Missouri requires the elements of "intent" and "purpose" but Kansas does not), *rev. denied* 310 Kan. 1071 (2019). Similarly, the State argues the panels in *Ziegler* and *Cunningham* found the "statutes comparable in all relevant respects." See *State v. Cunningham*, No. 118,011, 2018 WL 5726551, at * 9 (Kan. App. 2018) (unpublished opinion) (finding Missouri's first-degree robbery statute narrower than Kansas' comparable aggravated robbery statute because Missouri requires a specific purpose, conduct more than "mere force or threat of force," and acts done directly upon a victim's person and not merely in their presence).

*General legal principles*

A sentence is illegal if it (1) is imposed by a court lacking jurisdiction, (2) fails to conform to the applicable statutory provisions, or (3) is ambiguous about the time or manner that the sentence is to be served. K.S.A. 2020 Supp. 22-3504(c)(1). Under K.S.A. 2020 Supp. 22-3504, a defendant may challenge the district court's classification of his or her prior convictions and the resulting criminal history score used to sentence the defendant under the revised Kansas Sentencing Guidelines Act (KSGA). *State v. Weber*, 297 Kan. 805, 813-14, 304 P.3d 1262 (2013). If a district court erroneously classified a prior conviction in calculating the individual's criminal history score, the resulting sentence is illegal as not conforming to the statutorily authorized term of punishment. 297 Kan. at 813-14.

Generally, the district court must sentence the defendant according to the applicable law as it is interpreted at that time. *State v. Murdock*, 309 Kan. 585, 591, 439

4

P.3d 307 (2019) (*Murdock II*). Thus, a change in the law after a defendant is sentenced will not allow the defendant to appeal the sentence as one that is now "illegal." 309 Kan. at 591-92.

In *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018), our Supreme Court held: "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code," within the meaning of K.S.A. 2017 Supp. 21-6811(e)(3), "the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime." 307 Kan. at 562. So, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

We apply the 2018 *Wetrich* decision here even though Weston was sentenced in November 2013. The rule announced in *Wetrich* was a change in the law. See *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019). And Kansas courts allow an appellant to benefit from "a change in the law during the pendency of a direct appeal." *Murdock II*, 309 Kan. at 591-92. Although Weston's appeal was filed unusually late, this is his direct appeal. Thus, he gets the benefit of analysis under *Wetrich*. *State v. Ewing*, 310 Kan. 348, 352, 446 P.3d 463 (2019).

In this case, the district court's authority to classify an out-of-state conviction as a person offense is controlled by K.S.A. 2012 Supp. 21-6811(e). See *Wetrich*, 307 Kan. at 556-57. In Kansas, a defendant's sentence is determined by the severity level of the crime and the defendant's criminal history score. A court must classify out-of-state convictions as felony or misdemeanor according to the out-of-state jurisdiction's classification. Here, because Missouri categorizes second-degree robbery as a felony, we do the same. See K.S.A. 2012 Supp. 21-6811(e).

The court then designates the prior convictions as person or nonperson to determine the defendant's criminal history score. In designating an out-of-state crime as

person or nonperson, we refer to "comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed." K.S.A. 2012 Supp. 21-6811(e). But "[i]f the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2012 Supp. 21-6811(e). Weston relies on this law.

Our task is thus to compare the elements of the 1998 Missouri second-degree robbery statute with the elements of a comparable Kansas crime in September 2012, the date Weston committed his current crime of conviction. As we explain below, because the Missouri second-degree robbery statute criminalizes broader conduct than the comparable 2012 Kansas statutes, we remand for a corrected sentence.

### A Quick Comparison

In his appellate brief, Weston provides the panel with the 2017 language of the Missouri second-degree robbery statute, mistakenly citing it as the 1998 version. The two statutes are different. We set out here the proposed "comparable" Kansas statutes alongside the applicable Missouri statute:

| | |
|---|---|
| Mo. Rev. Stat. § 569.030 (1998)<br><br>1. A person commits robbery in the second degree when he or she forcibly steals property.<br>2. Robbery in the second degree is a class B felony. | K.S.A. 2012 Supp. 21-5420<br><br>(a) Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person.<br>(c)(1) Robbery is a severity level 5, person felony. |
| Mo. Rev. Stat. § 569.010(1) (1998)<br><br>(1) A person "forcibly steals," and thereby commits robbery, when, in the course of stealing he or she uses or threatens the immediate use of physical force upon another person for the purpose of:<br>(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or<br>(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft. | K.S.A. 2012 Supp. 21-5412<br><br>(a) Assault is knowingly placing another person in reasonable apprehension of immediate bodily harm.<br>(e)(1) Assault is a class C person misdemeanor. |
| | K.S.A. 2012 Supp. 21-5413<br><br>(a) Battery is:<br><br>(1) Knowingly or recklessly causing bodily harm to another person; or<br>(2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner<br><br>(g)(1) Battery is a class B person misdemeanor. |

7

| | K.S.A. 2012 Supp. 21-5415 |
| --- | --- |
| | (a) A criminal threat is any threat to: |
| |    (1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities |

*Kansas Robbery is Not Comparable.*

Weston cites Missouri caselaw to support his argument that the timing of force required in the 1998 Missouri statute includes circumstances when an offender "takes unlawful possession of property, and subsequently uses force to effectuate an escape with that property." *State v. Whittaker*, 551 S.W.3d 498, 501-02 (Mo. Ct. App. 2018). Admittedly, Weston cites 2018 caselaw to support his argument of an interpretation of a 1998 statute. But the Missouri appellate court interpreted the 1998 statutory language similarly in *State v. Lloyd*, 820 S.W.2d 105, 106 (Mo. Ct. App. 1991) (citing *State v. Sumpter*, 655 S.W.2d 726, 732 [Mo. Ct. App. 1983]) ("forcibly stealing" was defined as including the "use of force against any person to retain possession of stolen property").

A panel of our court recently analyzed this question of "timing of force" in *State v. Kanatzar*, No. 119,399, 2020 WL 593965, at *11 (Kan. App. 2020) (unpublished opinion) *petition for rev. filed* March 4, 2020. Kanatzar appealed the district court's decision to categorize his previous Missouri robbery convictions as person felonies. Kanatzar's previous convictions included two Missouri first-degree robbery convictions. Although the *Kanatzar* panel reviewed Missouri's 2003 statute defining first-degree robbery, the language mirrors the language of the 1998 second-degree robbery statute

that we must consider here. See Mo. Rev. Stat. § 569.030 (1998); Mo. Rev. Stat. § 569.030 (2003).

The *Kanatzar* panel determined that the elements of the Missouri first-degree robbery statute are broader than the elements of the Kansas robbery statute. 2020 WL 593965, at *11-12. This is because in Missouri, a person commits first-degree robbery when he or she peacefully takes unlawful possession of property and immediately after the taking uses or threatens to use force to overcome resistance and retain the property. See *State v. Brown*, 558 S.W.3d 105, 113-14 (Mo. Ct. App. 2018); *Whittaker*, 551 S.W.3d at 501-02. But under Kansas law, a person commits mere theft by peacefully taking unlawful possession of property and then using force to overcome resistance and escape with the property. See *State v. Plummer*, 295 Kan. 156, 165-68, 283 P.3d 202 (2012); *State v. Bateson*, 266 Kan. 238, Syl. ¶¶ 1-3, 970 P.2d 1000 (1998). In Kansas, for a taking of property to constitute a robbery rather than a theft, "the perpetrator's use of force against the victim must either precede or be contemporaneous with the perpetrator's taking of property from the victim." *State v. Edwards*, 48 Kan. App. 2d 383, 393, 290 P.3d 661 (2012). And theft in Kansas is a nonperson crime. See K.S.A. 2012 Supp. 21-5801. Thus, *Kanatzar* held that "if theft is the comparable crime to a form of Missouri [second]-degree robbery, then the Missouri robbery convictions should be scored as nonperson crimes." 2020 WL 593965, at *12.

Although this decision is not binding on us, we find *Kanatzar*'s approach persuasive. The Missouri robbery statute prescribes broader conduct because a person commits robbery under this statute "when he or she peacefully takes unlawful possession of property and immediately after the taking uses or threatens to use force to overcome resistance in order to retain the property." 2020 WL 593965, at *12. Yet a Kansas robbery conviction cannot be based on the use of physical force to retain peacefully taken property. Because the Missouri robbery statute covers conduct that does not constitute robbery in Kansas, it is broader than the 2012 Kansas robbery statute. As a result, the

9

Kansas robbery statute is not comparable under *Wetrich* and cannot serve as a basis for categorizing the Missouri convictions as person crimes. See *Wetrich*, 307 Kan. at 557.

*Other Comparable Person Crimes*

The State alternatively claims that using force to escape with peaceably taken property is comparable to the Kansas person crimes of battery, assault, and criminal threat. So even if Weston committed his Missouri robberies by using force only to carry out his escape after having taken property peaceably, Weston would have committed the Kansas person crimes of battery, assault, and criminal threat. We disagree.

The State contends that the 1998 Missouri robbery statute has elements identical to or narrower than these three person crimes. But the State provides little analysis comparing the relevant portion of the Missouri second-degree robbery statute to the elements of these Kansas crimes.

The State generally argues that these crimes are narrower than Missouri's requirement of forcibly stealing, as explained in *State v. Coleman*, 463 S.W.3d 353 (Mo. 2015). But that case made no comparison of other crimes. Instead, it merely held that "sufficient evidence support[s] the trial court's finding that Mr. Coleman committed the crime of robbery in the second-degree because he forcibly stole the money by threatening the immediate use of physical force for the purpose of both defeating resistance to the theft of the money and compelling its surrender." 463 S.W.3d at 355. Had that case examined only Coleman's resistance to his theft of the money, we may be more persuaded. As it is, we find no Missouri case on point and base our analysis on the statutory language.

10

*Kansas Criminal Threat is Not Comparable.*

Criminal threat occurs when a person communicates a threat to commit violence with intent to put others in fear or to cause the disruption or evacuation of a particular place of assembly or public building. See K.S.A. 2012 Supp. 21-5415. The Kansas criminal threat statute has no relation to a "taking" of something from a victim. As a result, it has little in common with the Missouri robbery which requires "forcibly stealing" and does not require any threat. Thus, we do not consider the Kansas criminal threat statute as comparable to Missouri's second-degree robbery statute under *Wetrich.* See *Wetrich*, 307 Kan. at 557.

*Kansas Battery is Not Comparable.*

Similarly, we find the 2012 Kansas battery statute different from Missouri's second-degree robbery statute. Kansas battery requires an offender either to cause great bodily harm to another person or to physically contact another in a rude, angry, or insulting way. K.S.A. 2012 Supp. 21-5413. On the other hand, the Missouri robbery statute does not require any direct contact. See Mo. Rev. Stat. § 569.030 (1998). In fact, the Missouri statute does not require the defendant to cause the victim any harm—the mere threat of force is enough. Mo. Rev. Stat. § 569.030 (1998); see *State v. Rounds*, 796 S.W.2d 84, 86 (Mo. Ct. App. 1990) (finding sufficient evidence of force or threat of force when the defendant told bank teller not to call police or he would "blow [his] head off" and kept his hand in his pocket, implying that he was armed); *State v. Thompson*, 588 S.W.2d 36, 39 (Mo. Ct. App. 1979) (holding robbery in the second degree occurs when a victim relinquishes property due to a threat that injury may be inflicted at some different time). Because making a threat is enough to violate the Missouri second-degree robbery statute, the Missouri statute criminalizes broader conduct than the Kansas battery statute. The Kansas crime of battery is not a comparable offense so it cannot be used to categorize the Missouri statute as a person crime. See *Wetrich*, 307 Kan. at 557.

11

*Kansas Assault is Not Comparable.*

Likewise, the Kansas crime of assault is different from Missouri second-degree robbery. See K.S.A. 2012 Supp. 21-5412. Kansas assault requires that the offender knowingly place another in "reasonable apprehension of immediate bodily harm," while the Missouri robbery statute does not require the victim to be placed in apprehension of any bodily contact. Compare K.S.A. 2012 Supp. 21-5412(a) with Mo. Rev. Stat. § 569.030 (1998). Making a threat is enough to violate the Missouri statute, "while in Kansas the threat must result in the victim's apprehension of immediate harm." *Kanatzar*, 2020 WL 593965, at *12. Thus, the Missouri statute criminalizes threats beyond those which place the victim in reasonable apprehension and is therefore broader than Kansas's 2012 assault statute. See 2020 WL 593965, at *12. Because the Missouri second-degree robbery statute is not identical to or narrower than the Kansas battery statute, the Kansas battery statute is not a comparable crime and therefore may not be used to categorize the Missouri statute as a person crime. See 2020 WL 593965, at *12.

*Conclusion*

We find that the Missouri second-degree robbery statute penalizes a broader range of conduct than the Kansas robbery, battery, assault, or criminal threat statutes. Because the district court miscategorized Weston's prior Missouri convictions as person felonies, we vacate his sentence and remand for further proceedings to recalculate Weston's criminal history score.

*Did the District Court Abuse its Discretion by Denying Weston's Motion to Withdraw His Plea?*

Weston next argues that the district court erroneously found that he knowingly and voluntarily entered his plea. In his motion to withdraw his plea, Weston argued that the

district court should permit him to withdraw his plea because his attorney did not effectively review discovery materials or the plea petition with him and because he was under the influence of narcotics related to dental treatment.

*Standard of Review*

Under K.S.A. 2020 Supp. 22-3210(d)(1), a guilty plea "for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." Weston erroneously urges this court to apply a de novo standard of review ("The present issue requires this Court to interpret and apply K.S.A. 22-3210[d]. Statutory interpretation is a question of law and this Courts' review is unlimited."). But we apply an abuse of discretion standard. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006). "A trial court abuses its discretion if it bases its decision on a legal or factual error, or if no reasonable person would agree with the decision." *State v. Harper*, No. 121,943, 2020 WL 7636424, at *3 (Kan. App. 2020) (unpublished opinion) (holding an abuse of discretion is not found if the district court fails to explicitly reference the *Edgar* factors when considering a presentence motion to withdraw a plea). On appeal, the party asserting the district court abused its discretion bears the burden of showing an abuse of discretion. See *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

*Analysis*

Weston argues that he did not plea voluntarily. He argues that because of a "recent dental procedure," he was "under the influence of 'normazine and 1,000 [milligrams] of Tylenol'" when he entered his plea and was unable to think clearly about the consequences of his actions. And he argues that he did not understand the nature and consequences of his plea because his attorney failed to adequately explain them to him.

13

When exercising its discretion, the district court must "evaluate whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. [Citation omitted.]'" *Edgar*, 281 Kan. at 36 (quoting *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 [2001]). These are not exclusive factors and the court should not ignore other facts that might exist. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). But the district court is not required to consider *Edgar* factors that the defendant has not argued. *State v. Williams*, 290 Kan. 1050, 1055-56, 236 P.3d 512 (2010). And the district court need not make express findings on each *Edgar* factor; an implicit consideration of the factors is enough. *Harper*, 2020 WL 7636424, at *3.

*Representation by Competent Counsel*

The first *Edgar* factor asks whether Weston had competent counsel. See 281 Kan. at 36. On appeal, Weston argues solely that his previous attorney "failed to adequately explain [the plea] to him."

Nothing in the record suggests Weston's previous attorney was incompetent. The record shows that both judges who presided over Weston's various proceedings believed Michael Highland to be an experienced, competent attorney and cautioned Weston against restarting the whole process. Highland told the district court that he thought the representation was going well and only turned sour when Weston learned of his unexpected criminal history score. The district court presiding over the plea withdrawal hearing did not specifically state Weston's previous attorney was "competent," but it reviewed the plea hearing transcripts when the court asked Weston if he was satisfied with his attorney's representation and whether he had any complaints about Highland at that time. Weston answered that he was satisfied and had no complaints.

14

The same judge presided over the plea hearing and the motions hearing. The district court therefore had a chance to observe the demeanor and behavior of both Weston and Highland during the plea hearing. The Kansas Supreme Court has held that a district court is in the best position to observe the demeanor of a defendant and draw conclusions on whether the plea was knowingly and intelligently made when there is contradictory testimony. *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012). Although the district court did not explicitly find "competent representation," it considered Weston's responses to its questions about his attorney. Weston failed to establish that he did not have competent representation when he entered his plea. Thus, the district court did not abuse its discretion in determining that the first *Edgar* factor was not established and could not serve as a basis for good cause. See 281 Kan. at 36.

*Misled, Coerced, Mistreated, or Unfairly Taken Advantage of*

The second *Edgar* factor asks whether Weston was misled, coerced, mistreated, or unfairly taken advantage of. See 281 Kan. at 36. Weston's plea petition and the district court advised him what the maximum possible punishment for the crime could be. Weston gave the factual basis to the district court himself as a basis for the plea agreement. And Weston was not new to the criminal justice system—the district court stated in the plea withdrawal hearing that Weston had eight prior convictions "dating back to 1997 including convictions in '98, 2004, two in 2005, 2008, [and] 2009." The district court also discussed that during the plea, Weston stated he understood the plea agreement and did not have any questions about it.

Other than Weston's claim that his previous attorney did not discuss the plea with him but merely put it in front of him to sign, he does not claim on appeal that Highland, or any other person involved in the proceedings, misled, coerced, mistreated, or took advantage of him in the plea process. Thus, the district court did not abuse its discretion

15

in determining that the second *Edgar* factor was not established and could not serve as a basis for good cause. See 281 Kan. at 36.

*Fairly and Understandingly Made*

The third *Edgar* factor requires the district court to consider whether the plea was "fairly and understandingly made." 281 Kan. at 36. Weston argues he was under the influence of "narcotics," including the medications of penicillin, "'normazine[,] and 1,000 [milligrams] of Tylenol.'" He argued at his plea withdrawal proceeding that the combination of the three "made it impossible for him to really fully know what was going on [during the] plea." Yet Weston has provided no evidence that these medications could impair his ability to understand the proceedings.

During the plea withdrawal hearing, the district court pointed out that during the plea colloquy, Weston told the court that he was not under the influence of alcohol or drugs, that he was of clear mind, and that he understood the proceedings. The district court held that the plea Weston signed was a standard plea petition that informed him of all the rights he had and that he freely and voluntarily waived those rights to enter the plea. The district court also noted Weston's statement that he had reviewed the plea with his attorney and understood all its conditions. Weston said that he did not have any questions about the plea. The district court also held that in addition to the information on Weston's signed plea petition, the district court orally informed Weston of the constitutional rights he was giving up by entering the plea.

Because the district court presided over both hearings, it had observed the defendant when he stated that he understood his rights, that he understood the charges against him, and that he understood he was entering a plea on his own volition. Thus, the district court would be in the best position to determine whether the defendant's later claims of misunderstanding are genuine or not. Because the district court relied on the

16

record and its ability to witness Weston's demeanor, the district court did not abuse its discretion in determining that the third *Edgar* factor was not established and could not serve as a basis for good cause. See 281 Kan. at 36.

*Conclusion*

Weston fails to show that the district court abused its discretion by denying his motion to withdraw his plea, so we affirm his conviction. But we reverse Weston's sentence and remand with directions to recalculate his criminal history score.

Conviction affirmed, sentence vacated, and case remanded with directions.