NOT DESIGNATED FOR PUBLICATION

No. 116,699

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CORNELIUS RUFF III,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed December 22, 2017. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Bryanna R. Hanschu*, assistant district attorney, *Marc A. Dupree, Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.


PER CURIAM: Pursuant to a plea agreement, Cornelius Ruff III pled no contest to, and was convicted of, one count of aggravated kidnapping and two counts of aggravated robbery. Prior to sentencing, Ruff filed a motion to withdraw his plea, claiming that the plea was not fairly and understandingly made and that his attorney misled and coerced him into taking the plea. After conducting an evidentiary hearing, the district court denied the motion and thereafter sentenced Ruff to a term of 172 months in prison as recommended in the plea agreement. Ruff appeals from the denial of his motion.

1

We find no abuse of discretion by the district court and affirm the judgment and the order denying withdrawal of Ruff's plea.

*Factual and Procedural Background*

On July 30, 2014, Ruff was charged with six counts:  kidnapping, aggravated kidnapping, aggravated criminal sodomy, aggravated burglary, and two counts of aggravated robbery. The case was set for jury trial but due to witness issues and Ruff's pro se motion to dismiss his counsel, Paul Dent, the trial was delayed. Dent was allowed to withdraw, and KiAnn (McBratney) Spradlin was appointed as new counsel.

Prior to Spradlin's appointment, the State had extended a plea offer involving three counts, including the aggravated criminal sodomy charge. Ruff had declined this offer. On August 24, 2015, the morning of the rescheduled trial, Spradlin negotiated a revised plea agreement which exchanged the aggravated criminal sodomy charge for a nonsexual offense of the same severity level. Ruff accepted the new plea agreement and tendered his written petition to enter a plea of nolo contendere to one count of aggravated kidnapping and two counts of aggravated robbery. The agreement recommended concurrent sentences totaling 172 months in prison and required Ruff to testify against a codefendant, LeEric Braden.

After conducting a detailed colloquy with Ruff, the district court accepted the plea and convicted Ruff of the three charges. The matter was scheduled for sentencing.

Ruff then filed numerous pro se motions:  motion to withdraw plea agreement; motion to dismiss for lack of evidence; motion for relief of counsel; motion to disqualify judge; and motion for exculpatory matter. On November 12, 2015, Spradlin filed a motion to withdraw, and attorney Mike Sexton was appointed as counsel for Ruff.

2

On December 10, 2015, the district court held an evidentiary hearing on Ruff's motion to withdraw his plea. Ruff was represented by Sexton and both Ruff and Spradlin testified.

Ruff generally alleged that Spradlin did not effectively represent him. He claimed that he did not understand the plea agreement at the time he entered it, that he was misled to signing it, and that "it's unfair in each and every way."

The State had already extended a plea offer when Spradlin was appointed to Ruff's case, and Spradlin testified that it was one of the first things she discussed with Ruff when she was appointed to his case. Spradlin met with Ruff in jail five times and they also communicated via letters. When they discussed plea negotiations, Ruff indicated that he was not guilty and was not interested in the plea deal, so Spradlin continued preparing for trial.

Shortly before trial, Spradlin visited Ruff in jail to prepare. She also brought documents and paperwork to the jail to discuss with him. At that time, Spradlin reviewed each page of discovery with Ruff, shown by Spradlin's green mark and Ruff's initials on each page. Spradlin showed Ruff a sentencing grid, marking and explaining the potential outcomes in his case. Finally, Ruff signed a form that indicated Ruff and Spradlin discussed plea negotiations, went over the current plea offer, and that Ruff declined that offer.

The morning of the trial, Ruff expressed concerns to Spradlin about going to prison after being convicted of a sexual offense. Spradlin approached the State about dropping the aggravated sodomy charge from the offered plea deal and exchanging it with another offense of the same level. The State agreed to that exchange, and Spradlin spoke to Ruff about the new plea deal:

"I talked with my client about that and—and I said multiple times to my client that I'm not here to force him to do anything. I'm ready for trial. Trials are good with me, you know. And he had indicated to me that he wanted to take the offer as modified removing the sexual offense."

Spradlin denied she misled Ruff, misrepresented his plea, or coerced him into taking the plea. She testified that although the more complicated areas of the law were more difficult for him to grasp, Ruff understood what was going on in his case and was not otherwise incapable of entering into this agreement. She said that she reviewed the plea agreement with him and explained what rights he would be waiving. She concluded her testimony by explaining that she and Ruff had what she considered to be a good working relationship with no communication problems, and that "based on totality of the circumstances in dealing with him all those months, [she] was confident that he understood what was happening on August 24th."

After both Ruff and Spradlin testified, the district court judge detailed the procedure that the court follows when a defendant seeks to enter into a plea agreement, which includes making sure the individual is fully informed of his or her rights and providing an opportunity for questions. The judge recalled that Spradlin and Ruff spoke off the record before indicating Ruff wanted to enter the no contest plea. The judge denied Ruff's motion to withdraw his guilty plea, saying:

"I don't know if it's buyer's remorse or—I have no idea what happened, but now he's dissatisfied with the plea. That's not uncommon for people who enter guilty pleas, no contest pleas, et cetera. I see it a lot. That's why I take the time to go over the plea before I accept it with the defendant in open court under oath and I explain to him the form and I explain to him what he's doing and I ask him if he has any questions about it. And that's the time to ask the question. He had no questions. He understood everything and we took the time to go over it with counsel present to explain to him what it was he was doing.

4

" . . . Certainly every defendant is entitled to his day in court, but a knowing, voluntary, noncoercive waiver of that is also acceptable. I can find no injustice, no manifest injustice. I can find no violation of your Constitutional rights.

"For you to come before this Court and tell me you were misled is disingenuous on your part, sir. You were not misled. You understood exactly what you were doing. I took great pains to make sure you understood exactly what you were doing. To come in here and say that you didn't understand later is not accurate, it's not credible, and I'm not buying that at all. Your Constitutional rights were protected. Your substantial criminal rights were protected.

"I can find no problem with your counsel. She's a veteran criminal defense attorney in this jurisdiction, has appeared in this court many times. I can find no evidence that you were misled, coerced, mistreated, unfairly taken advantage of and I made sure that the plea was fairly and understandingly made. And your allegations with no factual support whatsoever, no evidence whatsoever to solidify and convince this Court otherwise, motion is denied."

Ruff continued filing pro se motions, including an ethical complaint against Mike Sexton, who moved to withdraw. On June 22, 2016, through his fourth attorney Debera Erickson, Ruff filed a formal "Motion for the Court to Reconsider his Motion to Withdraw his Plea." The court denied the motion to reconsider on July 14, 2016. Ruff was sentenced on July 14, 2016, to a 172-month prison sentence per the plea agreement. Ruff filed his notice of appeal on July 22, 2016.

*No Abuse of Discretion by District Court*

K.S.A. 2016 Supp. 22-3210(d)(1) provides: "A plea of guilty of nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." We review the denial of a presentence motion to withdraw a plea applying an abuse of discretion standard. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). A judicial action constitutes an abuse of discretion if (1) no

reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). In conducting such review, we do not reweigh the evidence presented to the district court nor do we make credibility determinations. The party asserting that the trial court abused its discretion bears the burden to prove such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 89-90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

In determining whether a defendant has shown good cause to withdraw a plea, a district court should consider three factors established in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. Although not to be applied mechanically, these factors establish viable benchmarks for the district court when exercising its discretion. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

Regarding the first factor, the district court properly determined Ruff was represented by competent counsel at the time he entered his no contest plea. When Spradlin was first appointed to Ruff's case, she explained the plea offer the State had already extended. She met with Ruff multiple times in jail and corresponded with him through the mail. She was prepared and willing to go to trial if Ruff did not want to enter a plea, and she continued negotiation of plea agreements until the State extended an offer Ruff was comfortable with. The district court noted Spradlin is a "veteran criminal defense attorney."

Ruff next argues he was misled and coerced into taking the plea and should have proceeded to trial on a duress-based defense. He asserts his trial counsel misled him into believing his duress defense was unpersuasive and likely to result in conviction. Ruff claimed he felt coerced into entering the plea to avoid an "unjustified" sexual charge,

asserting that he "froze up and . . . let her talk me into it. And basically I feel that that plea is not a plea."

However, the evidence establishes Spradlin worked to ensure that Ruff only entered into a plea agreement he felt comfortable with. It is noteworthy that Ruff had expressed concern about serving jail time after being convicted of a sexual offense and he agreed to the plea when it was further negotiated in his favor by dropping the aggravated sodomy charge. There is no indication other than Ruff's generic protests that he felt compelled to agree; in fact he gone for months without accepting a plea agreement while Spradlin prepared for trial. The record supports the propriety of the district court's determination Ruff was not mislead, coerced, mistreated, or unfairly taken advantage of when entering his plea.

Finally, Ruff argues his plea was not fairly and understandably made. He suggests he did not understand he would be treated as though he pled guilty rather than "no contest." This claim flies in the face of Paragraph 8 of his written petition to enter a plea of nolo contendere in which he acknowledged that the same punishment could be imposed as if he had been convicted by a jury.

Ruff further argues his plea was not fairly made because he should have been given immunity for his testimony against the codefendant, Braden. This is inconsistent with his prior argument to the district court that he simply didn't want to testify against Braden out of fear for his personal and family safety.

Ruff's testimony at the motion hearing basically consisted of generic and unspecific insistence that he did not understand the plea or its consequences, couched in the broad parameters of the *Edgar* factors. The record indicates he had the assistance of competent counsel with him in court and was given ample opportunity to speak with her prior to entering the plea. Spradlin and the district court went through the plea tender with

7

Ruff and established his basic understanding of the nature and consequences of entering the plea. The district court noted that Ruff "was sworn and [the court] went over the plea petition with the defendant just about paragraph by paragraph giving him an opportunity to ask questions or let this Court know if there was any problems at any juncture. He did not." At each stage, Ruff expressed he was aware of what was happening and desired to enter his plea. The court also had the opportunity to observe Ruff and Spradlin interact and to ensure Ruff was of sound mind when he entered the plea. Based on these observations, the district court properly found that the evidence established the plea was voluntarily and knowingly made.

We find that the district court did not abuse its discretion in determining that Ruff's plea was voluntarily and knowingly entered and that he had not demonstrated good cause to withdraw the plea. The district court made its findings based on the facts and made no error of law. Reasonable persons could agree with the conclusion reached that Ruff was not entitled to relief.

Affirmed.