NOT DESIGNATED FOR PUBLICATION

No. 118,864

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ELIZABETH L. TISDALE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed March 8, 2019.
Affirmed in part, vacated in part, and remanded in part.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.


Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.


PER CURIAM: Elizabeth L. Tisdale appeals from the district court's imposition of
Board of Indigent Services' (BIDS) attorney fees totaling $300. She also contends that the
district court abused its discretion when it denied her motion to withdraw her plea.
Because we find that the factors set forth by the Kansas Supreme Court in *State v.
Robinson*, 281 Kan. 538, 132 P.3d 934 (2006), were not properly applied, we vacate the
assessment of attorney fees and remand that issue to the district court. However, because
we find that Tisdale has not shown an abuse of discretion by the district court, we affirm
the district court's denial of her motion to withdraw plea.

1

On May 18, 2017, Elizabeth L. Tisdale was charged with one count of felony theft, a severity level 9 nondrug grid nonperson felony in violation of K.S.A. 2016 Supp. 21-5801(a)(1), (b)(3) for taking items from a Kohl's store in Wichita. On July 12, 2017, Tisdale pleaded guilty to this charge pursuant to a written plea agreement. The district court accepted that plea. Accordingly, Tisdale was found guilty.

At the plea hearing, the district court had the following colloquy with Tisdale:

"THE COURT:  You're represented in this case by [Brandon] Hottman, the attorney standing next to you, is that correct?
"THE DEFENDANT:  Yes, sir.
"THE COURT:  Have you had enough time to discuss with him the charges filed against you, your rights in this case and the consequences of changing your plea?
"THE DEFENDANT:  Yes, sir.
"THE COURT:  Are you satisfied with the services he's provided for you in this case?
"THE DEFENDANT:  *Yes, sir.*
"THE COURT:  Have the courts treated you in a professional and courteous manner up to this point?
"THE DEFENDANT:  Yes, sir.
"THE COURT:  Miss Tisdale, I've received two documents. The first is entitled defendant's acknowledgment of rights and entry of plea. It is a document that is four pages long and your signature's here on the last page dated July 10, 2017. Is that your signature, ma'am?
"THE DEFENDANT:  Yes, sir.
"THE COURT:  Was it your decision alone to sign this document?
"THE DEFENDANT:  *Yes, sir.*
"THE COURT:  Have you had enough time to review it completely with your attorney?
"THE DEFENDANT:  *Yes, sir.*
"THE COURT:  Has he answered any and all questions about what is in this document?
"THE DEFENDANT:  *Yes, sir.*" (Emphases added.)

On July 26, 2017, 14 days after the plea hearing, Tisdale filed a pro se motion to withdraw her plea. In her motion, Tisdale argued (1) that she was "unaware of the intricate details" of the case because she "was not [p]roperly [p]rovided with a full discovery," (2) that "the small amount of discovery . . . elucidated that [Tisdale] hadn't unlawfully deprived anyone nor the store in question of its posse[s]sions," (3) and that "she was m[ali]ciously m[a]nipulated by appointed counsel into signing a [p]lea agreement."

Almost 30 days after Tisdale's pro se motion was filed, a new attorney appointed to represent Tisdale, Sharon Barnett, filed a supplemental motion to withdraw plea. The supplemental motion attempted to further explain Tisdale's pro se motion. It alleged that Tisdale felt "she was misled by prior counsel and that he took advantage of her custody status to get her to enter a plea by promising her she'd get work release immediately upon entering a plea." It was also alleged that Tisdale "believe[d] [her] prior counsel was not competent in that he did not review discovery with her and didn't explain to her exactly what she was pleading to." Finally, it was asserted that Tisdale was innocent and that "were it not for the conduct of prior counsel, she would not have entered a guilty plea . . . ."

The district court held a hearing on Tisdale's motion to withdraw plea on September 19, 2017. At the hearing, Tisdale testified as did her prior attorney, Brandon Hottman. Tisdale testified that she met with Hottman "[t]wo or three" times. She asserted that during their first conversation, Hottman told her that if she "wanted to get work release authorized, [she] would have to enter a plea." Moreover, Tisdale asserted that during their second conversation, Hottman told her that he had received a plea offer from the State in which she would plead guilty to the felony theft charge and that he could "get this in court next week and [she would] be in work release two days after that." According to Tisdale, Hottman told her that "'[o]nce you enter the plea, I don't see the judge not allowing you to go to work release.'"

3

Tisdale also testified about the plea hearing. She admitted that she reviewed the written plea agreement with Hottman and did not have questions concerning her rights. Moreover, she admitted that the district judge questioned her about the plea and that she did not raise any concerns at the hearing. She also admitted that she told the district judge that she was pleased with Hottman's representation.

Nevertheless, Tisdale testified:

"As we were standing there . . . Brandon Hottman had a file, and he was going through some papers, and I happened to look over and the—the first two lines stated that location of the Kohl's and how many people participated. I then asked, 'What's that?' And he's like, 'oh, nothing, just a little bit of discovery.' Upon seeing that, I knew for sure that wasn't me."

Tisdale testified that she had not seen any of the discovery prior to that time.

Although Tisdale testified at the motion hearing that she had stolen merchandise from Kohl's before, she claimed:

"I've never taken $2,000 worth of merchandise from any store. And then I'm never with four to five people, if that makes sense. It's always the same thing. It's consistent, you know. The pattern that the people used, it was something that I do or that I've done. However, it wasn't me that time. And that same location had just sent me maybe a month or two prior to me being locked up a letter saying that they were suing me for $90."

On cross-examination, Tisdale admitted that although she allegedly saw the papers in Hottman's possession at the plea hearing, she did not tell the district court that she did not wish to proceed. Specifically, she testified:

"Q. So if I'm understanding this correctly, you're saying that you saw these additional discovery materials in Mr. Hottman's file at this hearing, but—

4

"A. I did.

"Q.—you did not stop and tell the court, 'I don't want to go forward with this hearing?'

"A. I did not.

"Q. You didn't stop and tell your attorney that you wanted to stop this hearing?

"A. I did not."

Tisdale also admitted that during the plea hearing, she believed the charge that she took "property from Kohl's with a value of at least $1,500 but less than $25,000" to be true.

Hottman testified that Tisdale told him that she was at the Kohl's location with approximately three other individuals at the time of the theft. Hottman also testified that he told Tisdale at their first meeting that she was charged with theft from a Kohl's and that she had brought up the issue of work release. According to Hottman, Tisdale told him that she was on work release for some municipal court cases and hoped that she could get work release in this case. Because no plea offer existed at the time, Hottman and Tisdale did not discuss a plea.

Hottman also testified that at his second meeting with Tisdale, he discussed with her "what the parameters of what [a] plea agreement might be, and what [Tisdale] would be willing to agree to." According to Hottman, "[n]o formal offer had been extended at that time." Hottman indicated that after the second meeting with Tisdale, he received the discovery from the State.

In addition, Hottman testified that he met with Tisdale three additional times. Hottman recalled that on one of these subsequent visits he and Tisdale discussed the discovery in her case. Hottman stated that the discovery included "photographs, a police report, and some surveillance videos." Hottman stated that he generally reviews discovery items and provides a summary to his clients rather than providing them with a copy of discovery items.

After receiving an informal plea offer from the State, Hottman discussed it with Tisdale on July 4, 2017. Two days later, Hottman received a written plea offer and visited with Tisdale again on July 10, 2017. Hottman testified that on this visit he reviewed "the plea and the acknowledgement of rights" with Tisdale. After Tisdale raised an issue regarding the amount of restitution, Hottman told her that they could request a restitution hearing at sentencing.

Concerning work release, Hottman stated that he "would never had made any promises that [Tisdale] was going to get work release for sure." Hottman testified that he "ask[ed] for the work release right after the plea hearing." Hottman further explained:

"And generally I always tell them 'I'm not the judge, I don't make the decision.' And I always give them my opinion on the likelihood of success—or how successful a bond modification request might be based on factors. And with Ms. Tisdale, we discussed it was a good thing that she was already work release authorized in the other case, that might help her get work release in this case. But I never guaranteed it."

After Hottman testified, the district court applied the factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). First, the district court found that Tisdale was represented by competent counsel. Second, the district court found that Tisdale was not "misled, coerced, mistreated, or unfairly taken advantage of" in agreeing to enter a plea. Third, the district court found that the plea was fairly and understandably made in writing. In denying Tisdale's motion to withdraw her plea, the district court explained:

"You were given counsel, you had an opportunity to speak to that counsel, you had an opportunity to either agree or disagree at the hearing. And if for some reason you did not agree, you needed to say so. You needed to say that this—this plea was not being entered into with the understanding it was written in the agreement, that there was some other side agreement with work release. None of that was ever mentioned on the record to the Court. And so the words in the plea agreement that were written and also the words at the

6

plea hearing from the defendant do have meaning and the Court must give them their ordinary meaning."

On November 1, 2017, the district court held a sentencing hearing. The State requested an 11-month mitigated sentence to run consecutive to all her other cases. Tisdale's attorney objected to the restitution figure and requested a hearing. Accordingly, the district court continued the hearing to a later date.

The district court held the continued hearing on December 8, 2017. Although Tisdale was sentenced to 11 months of incarceration, her sentence was suspended and she was placed on probation for a term of 12 months. The district court ordered the sentence to run consecutive to any other sentences. The district court asked Tisdale if the $3,255.96 requested by Kohl's in restitution was "fair and just restitution." Tisdale responded "[y]es, sir." The district court then ordered restitution in the amount of $3,255.96. The district court also ordered her to complete a theft offender's program.

The district court questioned Tisdale on the record about her job and ability to pay restitution:

"THE COURT: How far did you get [in school]?
"THE DEFENDANT: Yeah, I got my GED.
"THE COURT: Good. Good for you. Have you worked?
"THE DEFENDANT: Yeah.
"THE COURT: What kind of jobs?
"THE DEFENDANT: All kinds. I'm working at Hard[ee]'s right now.
"THE COURT: Well, good for you. How many hours do you hold down there?
"THE DEFENDANT: Today was just my fourth day, so I'm not sure. It's part-time. However, I just had an interview, a second interview with Buffalo Wild Wings, but you just told me I can't—
"THE COURT: Well, I'll make an exception.
"THE DEFENDANT: Will you?

7

"THE COURT: Yeah. What I want to do is if she gets a job at Buffalo Wild Wings, please, tell the probation officer I will accept that. No other place, but I will accept Buffalo Wild Wings if you get a job there, because I want you working there."

Concerning the court costs and fees to be assessed, Tisdale's attorney and the district court had the following conversation:

"THE COURT: . . . You have to reimburse the Public Defenders Office an intake fee of $100. Everybody has to pay that. Ms. Barnett did a good job for you. Her fees are $600. Ms. Barnett, any thoughts about those fees?
"MS. BARNETT: Your Honor, the fact that she's going to be responsible for a substantial amount of restitution, I would ask the Court to consider waiving attorney fees.
"THE COURT: Here's what I'm going to do. I'm going to put those fees at $300. I'm going to cut them down to give you the benefit of the doubt. But we'll put a clause in here, if the defendant makes reasonable progress, according to your probation officer, into defraying or paying some of the restitution and expenses, I'll go ahead and waive the rest of it.

"If you kind of double up, pay some money out and if you're doing that and the probation officer says this is good, you can make a motion. Ms. Barnett can make a motion that will wipe out the rest of that $300. But if not, you still owe that $300."

Tisdale timely appealed on December 8, 2017.

ANALYSIS

*BIDS Attorney Fees*

On appeal, Tisdale contends that the district court erred in assessing $300 in BIDS attorney fees without considering her financial resources or the nature of the burden that payment of the attorney fees would impose upon her. Although Tisdale did not object to the imposition of attorney fees below, we may address this issue for the first time on appeal. *Robinson*, 281 Kan. at 543-44. In response, the State contends that the district

8

court's inquiry into Tisdale's educational background and work history is adequate to comply with *Robinson* and therefore no remand is necessary.

This issue involves an interpretation of the language of K.S.A. 22-4513. Interpretation of a statute is a question of law and therefore our review is unlimited. *Robinson*, 281 Kan. at 539. K.S.A. 22-4513(b) states, in relevant part:

> "In determining the amount and method of payment of such sum, *the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose.* A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment." (Emphasis added.)

In *Robinson*, the Kansas Supreme Court outlined the procedure a district court is to utilize when assessing BIDS fees:

> "The language of K.S.A. 2005 Supp. 22-4513(b) clearly requires a sentencing judge, 'in determining the amount and method of payment' of BIDS reimbursement, *i.e.*, at the time the reimbursement is ordered, to 'take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose.' The language is mandatory; the legislature stated unequivocally that this 'shall' occur, in the same way that it stated unequivocally that the BIDS fees 'shall' be taxed against the defendant. . . . The language is in no way conditional. There is no indication that the defendant must first request that the sentencing court consider his or her financial circumstances or that the defendant must first object to the proposed BIDS fees to draw the sentencing court's attention to those circumstances." 281 Kan. at 543-44.

9

After discussing the history of the BIDS statute, our Supreme Court held

> "[T]he sentencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly, stating on the record how those factors have been weighed in the court's decision*. Without an adequate record on these points, meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees would be impossible." (Emphasis added.) 281 Kan. at 546.

Here, we feel confident that the district court did "consider the financial resources of the defendant and the nature of the burden that payment will impose" because it reduced the defendant's fees from $600 to $300. Although the reduction in the BIDS fee may very well be reasonable, *Robinson* also requires that the district court "explicitly" explain on the record the factors it considered and how they weighed in its decision. In light of the holding in *Robinson*, we feel obligated to vacate the ruling regarding the assessment of BIDS attorney fees and to remand this issue to the district court.

*Motion to Withdraw Plea*

Tisdale also contends that the district court abused its discretion in denying her motion to withdraw her plea to reduced charges. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting that the district court abused its discretion bears the burden of showing such abuse. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

Upon a showing of good cause, K.S.A. 2018 Supp. 22-3210(d)(1) permits a defendant to withdraw a guilty plea before sentencing. Three factors—known as the Edgar factors—generally guide a district court's consideration of whether a defendant has

10

demonstrated the good cause to withdraw a plea prior to sentencing: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36. These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Nevertheless, these factors establish "'viable benchmarks'" for the district court when exercising its discretion. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

Tisdale argues that her attorney failed to provide her with copies of discovery, that she was misled into entering the plea deal "because she wanted to get out on work release," and that the plea agreement was not understandably made. In response, the State argues that Tisdale fails to cite authority requiring an attorney to provide copies of case discovery to their client, that Hottman provided adequate disclosure of case discovery to Tisdale in the form of summaries, that Tisdale understood the details of the theft and what crime the State charged her with committing, that Hottman did not mislead or coerce Tisdale into signing the plea agreement, and that Tisdale knowingly entered into the plea and knew which Kohl's location the charging documents referred to. We agree.

At the hearing on Tisdale's motion to withdraw his plea, her prior attorney testified about his procedure for providing discovery documents to his clients:

"Q. Okay. And again, [Tisdale's] replies and her conversations about this Kohl's incident is based on what you've told her because she has not seen any of the discovery?
"A. Yes. I—it is a practice that I have, I review discovery and then I summarize it to my clients. I don't always give them a copy of all the discovery."

Later, Hottman expanded upon his reasoning for his discovery policy:

11

"Q. And your policy for reviewing discovery with defendants who are in custody, what is that policy?

"A. I—I don't typically, for instance, give copies of videos or photographs. I occasionally will give copies of police reports that have been redacted if I think that it's likely that these cases are going to go to a preliminary hearing or a trial, just to get another [set of] eyes on it. Sometimes my clients can spot things that I have missed and so that's—but it's more of a case-by-case process, decision-making process.

"Q. In your recollection was there a lot of materials you had to go through in this case?

"A. I believe there was a police report, maybe a dozen or so photographs, and some surveillance videos.

"Q. In your experience would that be more on the low end when you are looking at the volume of materials to go through for a case?

"A. I've definitely seen more, yes.

"Q. Okay. Fair to say that's an amount that you could go through relatively quickly and synthesize what the kind of results of those documents are?

"A. Yes.

"Q. And fair to say you were able to relay the information from those materials to Ms. Tisdale?

"A. Yes."

Because her attorney did not receive the discovery from the State until after his second meeting with Tisdale, he could not have provided that information to Tisdale until after that date. According to her attorney, he did discuss the contents of all the discovery documents with Tisdale in a subsequent visit. Her attorney also testified that he and Tisdale discussed photographic evidence and police reports. Although Tisdale claims that she saw some papers in her attorney's hands at the plea hearing that were exculpatory, she told the district court at the plea hearing that she wished to proceed.

At the hearing on her motion to withdraw plea, Tisdale testified:

"Q: So if I'm understanding this correctly, you're saying that you saw these additional discovery materials in Mr. Hottman's file at this hearing, but—

12

"A: I did.

"Q: —you did not stop and tell the court, 'I don't want to go forward with this hearing'?

"A: I did not.

"Q: You didn't stop and tell your attorney that you wanted to stop this hearing?

"A: I did not."

In denying the motion to withdraw plea, the district court stated on the record:

"I will render my decision in the framework of the *Edgar* factors. Specifically the first one was, was the defendant represented by competent counsel. The answer is yes. There is no indication in the evidence presented that Mr. Hottman is not competent counsel. It appears to me after listening to the testimony that he was competent in all phases. *He did review discovery with Ms. Tisdale, although not according to her—or not to her satisfaction*. However, I would note *she did underestimate the number of meetings that she had with Mr. Hottman*. She testified to three. Mr. Hottman testified to five and he gave us specific dates. At least one of which, but actually probably more than one, but I think he said the June 8th meeting he went through discovery with her in detail. *He did summarize it to her*. And said that he discussed it in, perhaps, less detail at the other two meetings after he received it. I don't find anything in these—in the testimony that would allow the Court to reach the conclusion that Mr. Hottman was incompetent." (Emphases added.)

After witnessing both Tisdale and her attorney on the witness stand, the district court believed that she had been provided with summaries of all of the relevant discovery information. The State also correctly points out that Tisdale fails to provide legal authority indicating that counsel must provide actual copies of all discovery to a client prior to entering a plea. Issues not adequately briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

It is unclear from a review of the record what documents Tisdale allegedly saw in her attorney's possession. She simply testified that she saw "some papers" and that these papers listed the Kohl's address and the number of participants in the theft. On appeal,

13

Tisdale does not provide any additional information to help us in understanding what documents she alleges should have been provided to her by her attorney. Thus, we have no reason to conclude that her attorney was incompetent.

Likewise, we do not find from a review of the record that Tisdale was misled, coerced, mistreated, or unfairly taken advantage of in entering the plea agreement. At the plea hearing, the district court questioned Tisdale at length regarding her plea. Specifically, Tisdale advised the district court that (1) she had discussed the charges and plea with her attorney; (2) that she was satisfied with her attorney's representation; (3) she voluntarily agreed to sign the acknowledgement of rights and entry of plea; (4) that her attorney answered all of her questions; and (5) no one had promised her anything other than what was contained in the written plea agreement.

At the hearing on the motion to withdraw the plea, Tisdale acknowledged that her attorney had provided the plea agreement to her, that he had read it aloud to her, that she followed along with him as he read, and that the only questions she had were about the amount of restitution. Furthermore, during cross-examination, Tisdale admitted that no promises were made regarding work release. In particular, the following exchange occurred:

"Q. Okay. And I think you told Ms. Barnett he said, 'I don't see the judge not authorizing work release'?
"A. Yes.
"Q. Is that an accurate recollection of what you said just a few minutes ago?
"A. Yes. What are you asking me?
"Q. Did [Hottman]—he said, 'I don't see the judge not authorizing work release'?
"A. You're asking me if he said that?
"Q. That's what you told Ms. Barnett—
"A. Yes.
"Q. —just a minute ago?
"A. Okay.

14

"Q. Is that what he said to you?

"A. Yes.

"Q. Did he say, 'I promise you're going to get work release'?

 . . . .

"A. *No, he never promised me anything.*" (Emphasis added.)

Similarly, Tisdale's attorney denied that he ever guaranteed or promised that she would be placed on work release. Specifically, he testified:

"Q. At any point did you ever promise Ms. Tisdale that she would be placed in work release?

"A. No.

"Q. At any point did you promise her that if she took a plea she would be placed in work release?

"A. No.

 . . . .

"Q. What specifically was your advisory to her?

"A. Word for word, I don't know. And generally I always tell them 'I'm not the judge, I don't make the decision.' And I always give them my opinion on the likelihood or success—or how successful a bond modification request might be based on factors. And with Ms. Tisdale, we discussed it was a good thing that she was already work release authorized in the other case, that might help her get work release in this case. *But I never guaranteed it.*" (Emphasis added.)

Ultimately, the district court determined:

"I cannot find that [Tisdale] was misled by [her attorney] with regard to any issue. Specifically with regard to work release. I find [her attorney] credible. He has stated in detail what has happened here.

"I cannot find the defendant credible with regard to the alleged exchange of a plea for work release. It simply—I can't believe that occurred based on the testimony that's been given here. [Tisdale's attorney] was very clear that there were no promises made with regard to work release or anything else outside the plea agreement."

Finally, we conclude from our review of the record that Tisdale fairly and understandingly entered into the plea agreement. At the hearing on the motion to withdraw plea, Tisdale's attorney testified that he discussed with her the nature of the charges and the allegations in support of the charges. Although the attorney candidly stated that he did not recall if they talked about the specific address of the Kohl's store, he testified that he did discuss "the specific allegations in the affidavit [of probable cause] and the police reports" with his client.

We note that the affidavit of probable cause includes the following:

"This incident involves Elizabeth L. Tisdale. Affiant, after the investigation states:
    "On April 24, 2017 at approximately 1250 hours, D.T. was working as a cashier at Kohl's, *6900 W. Kellogg*, when four black females came to her register. . . .
    "N.S. was employed as a loss prevention officer for Kohl's, *6900 W[.] Kellogg*, when she reported for work at approximately 1400 hours on April 24, 2017." (Emphases added.)

After hearing the evidence presented at the hearing on the motion to withdraw plea, the district court concluded:

    "Finally was—the third factor was the plea fairly, understandingly made. The answer is yes. The plea is actually written down. The acknowledgment is actually written down. They were both read and signed by Ms. Tisdale. In addition, she acknowledged that she read, understood, and signed them during the hearing.
    "I cannot find anything that this Court believes was unfair to this process. It appears that she made this plea in an understanding manner . . . .
    "In addition, this Court must find that the words in the plea hearing have meaning. And that when Ms. Tisdale states that she has read and understood these documents, . . . that the Court must take you at your word. You were given counsel, you had an opportunity to speak to that counsel, [and] you had an opportunity to either agree or disagree at the hearing. And if for some reason you did not agree, you needed to say so."

16

We, therefore, conclude that the district court did not abuse its discretion in denying Tisdale's motion to withdraw plea. Accordingly, we affirm her conviction. However, for the reasons set forth above, we vacate the order requiring Tisdale to pay BIDS attorney fees and remand that issue to the district court for rehearing.

Affirmed in part, vacated in part, and remanded in part.