NOT DESIGNATED FOR PUBLICATION

No. 126,543

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OBADA F. ALASHQAR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Submitted without oral argument. Opinion filed January 10, 2025. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and COBLE, JJ.

PER CURIAM: Obada F. Alashqar pleaded no contest to a felony count of conspiracy to impair a security interest. He acknowledged in the plea agreement and at the plea hearing that he understood a felony conviction would most likely result in his deportation from the United States. Almost four years later, upon facing deportation, Alashqar moved to withdraw his plea. The district court denied his request as untimely. We affirm the district court's decision.

1

In January 2018, the State charged Alashqar with five counts of impairing a security interest in violation of K.S.A. 21-5830(a)(3), (b)(2)—all based on his alleged participation in a fraud scheme involving a used car lot operated by his brother.

At a scheduled trial date in late January 2019, the district court and parties discussed a potential plea agreement and whether to grant another continuance "because of immigration issues." The next month, Alashqar agreed to plead no contest to a single count of conspiracy to commit the charged offense in exchange for dismissal of the remaining counts by the State. The amended charge reduced the severity level of the offense from a severity level 9 nonperson felony to a severity level 10 nonperson felony, and the parties agreed to recommend the low number in the appropriate sentencing gridbox and to follow the presumption of probation based on Alashqar's criminal history. Alashqar signed a written acknowledgment of rights and entry of plea that stated, in paragraph nine that he agreed: "If I am not a United States citizen, I understand that a conviction of a felony offense most likely will result in my deportation from the United States," along with a handwritten statement that "[Defendant] spoke to immigration attorney."

Prior to accepting the plea, the district court embarked on one of the most extensive plea colloquies this court has reviewed related to potential immigration consequences. The court asked Alashqar if he was a United States citizen, to which Alashqar responded that he was a permanent resident. The court further inquired if Alashqar understood "that if you're not a US citizen that conviction of this felony will most likely result in your deportation from the United States." Alashqar said he understood.

Not to be deterred, the district court further asked whether Alashqar understood that "if you told me right now hey, knowing that, I don't want to plea, it's not a problem, I'll set aside the no contest, I'll set aside the finding of guilt and then you can proceed with trial or whatever you want." After Alashqar agreed he understood, the court continued to inquire if "based on the advisement about likely deportation, are you wanting to stand by your plea of no contest?" Alashqar said yes, wanting to proceed. Alashqar's appointed counsel then explained that Alashqar had expressed a concern about paragraph nine of the written acknowledgment of rights and entry of plea, so the parties agreed to a continuance

> "to allow him an opportunity to visit with an immigration attorney. And he has done so and satisfied himself of the concern that he had about the implications of a plea in this case. And it was his understanding, from visiting with that immigration attorney, as he has explained it to me, that deportation is linked more likely to a crime of violence than to a conspiracy to commit impairing a security interest. But he has visited with an immigration attorney about these concerns and I believe he knowingly and intelligently is proceeding this afternoon."

The district court asked if Alashqar understood "the immigration attorney could be wrong?" and Alashqar said he understood. The court then asked if Alashqar understood that "illegal immigration and immigration [is] kind of a hot topic, not with me, but with lawmakers, and they're all the time changing the law. And so it could be that they might change the law and then all of a sudden this is something that could resort in deportation." Alashqar again said he understood and that "I already have my citizenship application entered." The court further advised Alashqar about another pending case in which a noncitizen was now attempting to withdraw their plea after proceeding based on advice from an attorney that a conviction would not result in deportation, explaining:

> "So what I'm telling you is before you move forward with this plea and if you if you want to withdraw it, I'll allow you to do that, you need to take the position that this is

3

likely going to result in [you] being deported. That's the way you've really got to think about it.

"First of all, that's what I'm required to advise you under the law. And all the time people get advice and then it comes out to not be true. You understand that?"

Alashqar said he understood and that he had no further questions for the court or his counsel. After confirming for a final time that Alashqar stood by his no-contest plea and the court's finding of guilt, the court thanked Alashqar for "letting me clarify that" and concluded the hearing.

The district court accepted Alashqar's no-contest plea after confirming that he knowingly, voluntarily, freely, and intelligently entered the plea; that he understood the nature of the charges and consequences of entering the plea; and that he knowingly, voluntarily, freely, and intelligently waived his rights to a jury trial.

In April 2019, the district court sentenced Alashqar by following the plea agreement, imposing a controlling 5-month prison sentence but placing him on probation for 12 months. He was successfully released from probation in June 2020.

In March 2023, Alashqar filed two identical motions to set aside his plea agreement based on *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). In the motions, Alashqar claimed that upon returning from his home country of Jordan in December 2022, he was served with a notice of deportation proceedings. The notice was based on his felony conviction in this case. At the time of filing the motions, Alashqar was in federal custody in Georgia awaiting resolution of deportation proceedings. Alashqar argued he should be allowed to withdraw his no-contest plea because he entered the plea based on counsel's advice that deportation was only a possibility, while a competent and experienced immigration attorney would have advised him that deportation was a certainty.

4

The State filed a written response, arguing the motion was time-barred and, alternatively, that Alashqar "1) was given ample time to seek and consider advice regarding the risks to his immigration status from entering a plea to a felony, [and] 2) that he understood those risks and knowingly entered the plea."

Alashqar did not appear at the hearing on his motions but was represented by counsel. Alashqar's father also appeared. Counsel explained that after reviewing the plea hearing transcript, he decided having Alashqar testify by video from the immigration detention facility was unnecessary and they would proceed by standing on the pleadings. Counsel continued, explaining that Alashqar had nothing to offer to contradict the record or the transcript of the plea hearing except that his prior counsel should have advised more clearly that deportation was a certainty. Counsel also contended that the motion was not time-barred because *Padilla* mentioned no time limitations.

The district court denied Alashqar's motion, finding it was time-barred, but going on to find that it also failed on the merits. In reaching those conclusions, the court explained that Alashqar did not establish manifest injustice under the good cause factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), because the plea colloquy about the likelihood of deportation "basically beat this like a dead horse" and "went ad nauseum into this." The court also stated the plea agreement was not obviously unfair or shocking to the conscience because Alashqar was "advised of the risks by an immigration attorney, by his own attorney and by this Court and he chose to take the risk." The court also noted that Alashqar spoke with an immigration attorney and "satisfied himself of the concern and the implications of a plea."

Alashqar timely appealed.

5

Alashqar argues the district court erred in when it denied his 2023 motions to withdraw his plea, contending he received ineffective assistance of counsel and did not understand the immigration consequences of entering his plea. He claims these facts supported a finding of manifest injustice under K.S.A. 22-3210(d)(2).

Under K.S.A. 22-3210(d)(2), a motion to withdraw plea after sentencing may only be set aside if necessary to correct a manifest injustice. But for the court to consider such a motion, it must be filed within one year of either:

> "(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition." K.S.A. 22-3210(e)(1).

This time limitation can be extended only upon an "affirmative showing of excusable neglect by the defendant." K.S.A. 22-3210(e)(2). The Kansas Supreme Court has said this statute "places the burden on the defendant to at least make an effort to show that [excusable neglect] exists." *State v. Hill*, 311 Kan. 872, 878, 467 P.3d 473 (2020).

Because Alashqar never filed a direct appeal, the one-year limitation period began fourteen days after he was sentenced in April 2019. See K.S.A. 22-3608(c). Yet he did not file his motions to withdraw his plea until nearly four years later in March 2023. A review of the record further reveals that Alashqar failed to allege excusable neglect to extend the statutory limitation in either of his motions or at the hearings held by the district court. The closest he comes is a brief assertion that *Padilla* "which is the government law on this issue, doesn't mention anything about a time limitation on this." But *Padilla* did not discuss statutory time limitations because none were at issue in the

case, not because a motion to withdraw plea based on insufficient legal advice about potential deportation is somehow exempt from any such time limitation. In fact, the Kentucky statutory counterpart to K.S.A. 22-3210—under which the defendant in *Padilla* moved to withdraw their plea—also includes a time limitation, although it is more generous at "three years after the judgment becomes final." See Ky. R. Crim. Proc. 11.42(10).

Likewise on appeal, Alashqar fails to allege excusable neglect or make an affirmative showing of any neglect related to the timeliness of his filing. An issue not briefed is deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Accordingly, we affirm the district court and find Alashqar's request to withdraw his plea is barred as untimely. See *State v. Williams*, 303 Kan. 605, 607-08, 366 P.3d 1101 (2016).

Affirmed.