NOT DESIGNATED FOR PUBLICATION

No. 126,022

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN ANTONIO SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Hamilton District Court; WENDEL W. WURST, judge. Submitted without oral argument. Opinion filed April 19, 2024. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., SCHROEDER, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: This is an appeal by John Antonio Smith of the denial of his presentence motion to withdraw his plea. Smith entered guilty pleas to several sex crimes involving a minor known as K.B. He moved to withdraw his pleas based on claims of newly discovered exculpatory evidence and claims of coercion during mediation of his pleas. Our review of the record reveals that the district court did not abuse its discretion in denying Smith's motion to withdraw his plea. We affirm.

1

*After mediation, eleven felony charges are reduced to three.*

Smith was charged with 11 felony sex crimes with a minor, K.B. Those charges included rape, aggravated indecent liberties, indecent liberties, and sexual exploitation of a child. Following the court's suggestion, the parties engaged in mediation. Another judge served as a mediator. After a daylong mediation, Smith made the following plea bargain with the State:

- Smith would enter an *Alford* plea to count eight (aggravated indecent liberties with a child), count nine (indecent liberties with a child), and count ten (sexual exploitation of a child). Count nine would run consecutive to count ten.
- The State would dismiss with prejudice the remaining counts.
- Smith and the State agreed to recommend a durational departure.
- The controlling sentence would be 64 months with lifetime postrelease supervision.
- Smith would be required to register for his lifetime under the Kansas Offenders Registration Act.

*Smith made his pleas on the same day as mediation.*

At the plea hearing, the district court made several inquiries about Smith's understanding of the plea agreement and his willingness to enter a plea. The court asked if Smith had any questions about sentencing, which Smith replied he did not. Next, the court asked if Smith had an opportunity to discuss the agreement with his lawyer; Smith replied that he did. The court asked if Smith had any questions about the waiver of his trial rights, and Smith said he did not and that he had an opportunity to discuss the rights and waiver of those rights with his lawyer and was satisfied with that discussion. Finally, the court asked if Smith understood the offender registration requirements; Smith replied that he understood them.

Based on those inquiries, the district court found Smith competent to enter a plea. The court also found that he was entering a plea and waiving his trial rights knowingly, willingly, and voluntarily. The court concluded that Smith was entering a plea and waiving his trial rights after being afforded an opportunity to discuss his rights with counsel. Also, he was entering a plea and waiving his trial rights after being advised of any potential offender registration consequences.

When the district court asked how Smith pled on the three charges, Smith's lawyer stated that his "client maintains his innocence in this matter and would wish to enter an *Alford* plea at this time." Later the district court went back on the record to redo the arraignment to have Smith himself enter his *Alford* pleas to all three charges. See *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Based on the State's proffer of the factual basis to support each conviction, the district court found that had it proceeded to trial, the State would have established and proven beyond a reasonable doubt every element of the crimes charged in counts 8, 9, and 10. The district court found Smith guilty and convicted him of the three crimes.

*Before sentencing, Smith asks to withdraw his pleas.*

At the hearing on his motion, Smith concentrated on two subjects. He contended that he had discovered new and potentially exculpatory evidence and also contended that he felt he was coerced into taking his plea during mediation. We first examine the claim of newly discovered evidence. All this evidence concerned K.B.

On this subject, Smith called three family members—Tony and Martina Guebara and Cassidy Hardy—and he testified himself. His family members testified about an

3

incident they witnessed between the victim, K.B., and her foster mom while Smith was mediating his plea agreement. Tony Guebara, Smith's nephew, testified that during a break in mediation, while he and other family members were outside the courthouse, Guebara witnessed K.B.'s foster mom yelling at K.B. and "slapped her on the head and kept yelling at her, and then they took off but that she was still yelling at her." Martina Guebara, Smith's sister, testified that she also witnessed K.B.'s foster mom yelling at K.B. and that her foster mom "bopped her over the head." She also testified that the foster mom seemed upset and Guebara thought K.B. looked really scared. Finally, Cassidy Hardy, Smith's stepdaughter, testified that she saw the foster mom "hit the back of [K.B.'s] head, and she was screaming at" K.B.

Smith then testified. He focused on an email supposedly sent by K.B. to an email account shared by Smith and his wife. This email stated:

> "I really don't know where to start from, but I want to tell you that I am sorry for the pain I caused you and your family. I was brainwashed by my foster mom and my stepdad. I regret everything that has happened. Please forgive me. I don't know what came over me. You have been so nice to me and I'm so sorry. I hope you get this e-mail."

*Smith then talked about his feelings of coercion during plea mediation.*

Smith said he felt coerced to enter a plea agreement. In his view, the mediation consisted of a pretty intensive six or seven hours. He then testified that:

> "[T]he mediator guy came at me with all these different things, and when it came down to it, he told me pretty much I only had two options, either I took the 4 and a half years or 25 to life. And I asked for some time to think, because I didn't understand either. I've never been in this situation. I wanted time to think, to – and get with my family and see, you know, what I – what – what should we think – what, you know. But I didn't want to take any – either one of them in the beginning because I knew I didn't do anything wrong.

4

But he told me I didn't have much choice. It was either the 4 – take the 4 and a half years or 25 to life. So when it came down to it at the end, what I was supposedly going to do, I'd rather do the 4 and a half years than 25 to life."

He added that the mediator seemed to want to get the agreement over with and was "really aggressive" with him and "pretty much pushed" Smith toward either choosing one or the other and call it a day.

Smith added that his health was affected on the day of the mediation. Smith testified that he has had two massive heart attacks, and on the night of the mediation, Smith said he had "to take, like, five nitro pills to keep myself from having another heart attack." Smith attributed this to the "stress and trying to cope with that mediation guy that I didn't understand half of the stuff he was even talking about, and I couldn't ask for an explanation, because when he tried to explain it to me it's, like, he got irritated."

On cross-examination, Smith testified that his lawyer accompanied Smith during the entire six or seven-hour mediation. Smith also acknowledged that half the six or seven hours of mediation was spent on break with Smith's family. The State asked if Smith intended to enter a plea. Smith responded that he did not want to but did not have a choice.

The district court also asked Smith several questions about the options presented to Smith by the mediator. The court asked whether the mediator told Smith he had two options and pushed him towards one or the other to resolve the case. Smith told the court he had two options, either "do 4 and a half years or 25 to life." The court reiterated that the mediator presented two options—gave an opinion based on the evidence that Smith might be convicted and told Smith that he would get four and a half years in prison if he made an *Alford* plea but could receive 25 to life by being convicted at trial.

*The State presents testimony from two witnesses.*

The State called Undersheriff Jordan Grabowski who investigated the source of the mysterious email that was supposedly sent by the victim, K.B. Grabowski testified that when law enforcement executed a search warrant, they discovered the email account, where the email originated from, and that it was created a day before the email was sent. Then they reverse searched the IP address associated with the email and discovered it was created in Nigeria. At that point, Grabowski reached out to the Colorado Department of Homeland Security to aid their investigation. They learned that the email was linked to a cyber underground criminal type activity. On cross-examination, Grabowski testified that had K.B. been using email, she would be in trouble based on a court order in a CINC case. Grabowski could not conclude K.B. did not send the email but testified that K.B. told police that she did not write the email.

The State also called Magistrate Judge Christopher Velez, who conducted Smith's plea hearing. Judge Velez first testified about the recording methods used for plea hearings. He then testified about Smith's plea hearing and confirmed that he asked Smith if he had been coerced or offered some form of leniency or other advantage for entering a plea. Judge Velez testified that Smith answered that he had not been coerced or offered some advantage. Judge Velez saw nothing that made him question Smith's ability to enter a plea. A recording of the plea hearing was admitted as evidence.

*The district court denies Smith's motion.*

The district court denied Smith's motion to withdraw his plea based on the testimony from all the witnesses; reviewing the evidence presented; the court file; preliminary hearing transcript; the pleadings filed in the case; and the record of the change of plea hearing. Using the factors considered when presented with a motion to withdraw a plea before sentencing, the district court found Smith had competent counsel;

there was no evidence that Smith was misled in entering a plea; and Smith's plea was fairly and understandingly made.

The district court granted Smith's motion for a durational departure—citing substantial and compelling reasons and the State's support of the departure—and imposed a reduced 64-month prison sentence on the controlling conviction for aggravated indecent liberties with a child. Smith received 32-month prison sentences for both the convictions of indecent liberties with a child and the sexual exploitation of a child, which run consecutive with each other but concurrent to the controlling conviction sentence.

*The rules that guide us are well established.*

Appellate courts review a district court's denial of a motion to withdraw a plea for an abuse of discretion. See *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). Abuse of discretion occurs when the district court's action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). Defendants who wish to withdraw their pleas must bear the burden to demonstrate the district court abused its discretion. See *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021). Generally, a defendant "must establish that no reasonable person would have agreed with the district court's assessment of the three *Edgar* factors and its ultimate conclusions." *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017) (citing *State v. Edgar*, 281 Kan. 30, 37-38, 127 P.3d 986 [2006]).

When a district court considers a motion to withdraw a plea, the court "should look at the entire plea process—the written plea agreement, if any, counsel's advice, and the plea colloquy—to see whether, when all aspects are considered, the defendant understands the nature and consequences of a plea." *Reu-El*, 306 Kan. at 473.

*A presentence motion to withdraw a plea must demonstrate good cause.*

Because Smith moved to withdraw his pleas before sentencing, the proper standard is good cause. K.S.A. 2019 Supp. 22-3210(d)(1). Three factors guide the analysis to determine whether a defendant established good cause to withdraw a plea. These factors are (1) whether competent counsel represented the defendant; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). While these factors are viable benchmarks upon which district courts may rely, our Supreme Court cautions that courts "'should not ignore other factors that might exist in a particular case.'" *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). See *Frazier*, 311 Kan. at 382 (applying contract principles to good cause showing).

*Our review reveals no reason to reverse.*

In its ruling, the district court weighed the *Edgar* factors and concluded that Smith's plea was fairly and understandingly made and not the product of coercion or mistreatment. The district court found that the "mysterious e-mail that was received several days prior to our scheduled sentencing does not in this Court's mind provide evidence which indicates or raises a serious question as to . . . exculpatory evidence." The court found that the "e-mail in no manner constitutes good cause to allow the withdrawal of the plea." The details below reinforce our decision.

*Smith was represented by competent counsel.*

The district court found Smith was represented by competent counsel, noting the court's experience with Smith's lawyer. The court recognized Smith's lawyer is well-experienced in handling high-level felonies and negotiated a favorable plea agreement.

8

As to the plea agreement, the court noted it "was reached with the benefit of the mediator, who was independent and undoubtedly provided Mr. Smith with unbiased analysis and input as to the options that Mr. Smith had and the pros and cons of each of those options."

On appeal, Smith does not contend that his lawyer was ineffective or incompetent. Thus, the record supports the district court's finding that Smith was represented by competent counsel.

*Smith was not misled, coerced, mistreated, or unfairly taken advantage of.*

Smith argues that he was coerced into making a plea by the mediator, with his only choice being a plea to three of the crimes charged or risk a life sentence by going to trial.

The district court found no evidence that Smith was misled into entering the plea agreement. In support of its finding, the district court mentioned the lengthy mediation, the colloquy with Judge Velez at the plea hearing, and noted Smith's "own words at the hearing belie his contention now that he was coerced into taking this deal." The court noted that the two alternatives presented "were options and it's clear that Mr. Smith made an informed decision as to which option was more favorable to him at that time, and that he was not coerced into making that decision."

The terms of the plea agreement favored Smith, given that the State agreed to dismiss with prejudice all seven off-grid felonies and a severity level 10 felony. Had Smith proceeded to trial, the mediator and district court were correct in telling Smith that if he were convicted on any of the seven off-grid felonies, he would receive a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years. K.S.A. 2019 Supp. 21-6627(a)(1)(B) and (C).

9

The agreement also included the State's recommendation for a downward durational departure on the controlling term for the aggravated indecent liberties with a child conviction. The presumptive sentence without the departure, based on Smith's criminal history score of "D," would range between 89 and 100 months. Instead, Smith received a reduced prison sentence of 64 months.

The colloquy between Smith and the district court judge who took his *Alford* plea also supports the district court's findings. Smith answered no when Judge Velez asked if "anyone coerced or threatened you into entering a plea at this time." Smith also indicated "that he had not been offered some kind of leniency or clemency in exchange for pleading that day."

We find no fault with the court's reasoning based on the plea agreement; Smith's colloquy with Judge Velez at his plea hearing; and the testimony by Judge Velez at the motion hearing. The district court did not abuse its discretion in finding that Smith was not coerced, misled, mistreated, or unfairly taken advantage of.

*Smith's plea was fairly and understandingly made.*

The district court could not find that Smith was unfairly taken advantage of or that he misunderstood the terms and consequences of this plea agreement.

No doubt, given the severity of the crimes charged and the upcoming scheduled jury trial, Smith was stressed. But his comments to Judge Velez during his plea hearing "that there was nothing clouding his judgment, nor his ability to enter a knowing plea" causes us to doubt that his pleas were coerced by his health.

Judge Velez testified at the motion hearing that, based on Smith's statements, he found that Smith "was knowingly, willingly, and voluntarily entering a plea at that time and that he was competent to do so."

The record supports the district court's conclusion that Smith's plea was fairly and understandingly made given Smith's colloquy with Judge Velez at the plea hearing, the terms of the plea agreement, and Judge Velez's testimony at the motion hearing. Additionally, the district court reviewed the evidence presented at the hearing, the video recording of Smith's plea hearing, the agreement itself, and the transcripts and pleadings contained in Smith's case file. Based on that review, the district court found that Smith's plea was fairly and understandingly made. Therefore, the district court did not abuse its discretion.

CONCLUSION

We agree with the district court's conclusion that Smith failed to show good cause to withdraw his pleas. This conclusion was based on the testimony from witnesses at the motion hearing, the video recording of the plea hearing; the transcripts from the plea hearing and the preliminary hearing; and the court file. Using the three *Edgar* factors to evaluate whether Smith showed good cause to withdraw his plea, the district court found Smith failed to show good cause to withdraw his plea. Because the record supports this sound conclusion, the district court did not abuse its discretion.

Affirmed.