NOT DESIGNATED FOR PUBLICATION

No. 128,599

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALEX DJUANE SCHOOLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Submitted without oral argument. Opinion filed April 24, 2026. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., BRUNS and HURST, JJ.

PER CURIAM: Alex Djuane Schooler appeals the district court's denial of his presentence motion to withdraw plea. Schooler claims the district court abused its discretion by failing to address an argument below that Schooler did not understand he was pleading no contest to one count of distribution of a controlled substance causing death. The State counters that Schooler raises this claim for the first time on appeal and that otherwise the district court did not abuse its discretion. After thoroughly reviewing the record, we affirm the district court's judgment.

1

*Factual and procedural background*

This case stems from allegations that on June 14, 2023, Schooler provided pills containing fentanyl to M.J., who died minutes later as a result of combined fentanyl and ethynyl intoxication. While executing a search warrant on Schooler's home, law enforcement found large amounts of firearms and what was suspected to be fentanyl in a vehicle parked in the garage. The house was found to be 943.37 feet from school property. On June 21, 2023, the State charged Schooler with 17 counts including 1 count of distribution of a controlled substance causing death, 2 counts of unlawful possession of a controlled substance with the intent to distribute within 1,000 feet of school property, and 9 counts of criminal possession of a firearm by a convicted felon.

On March 12, 2024, Schooler moved to dismiss the nine criminal possession of a firearm by a convicted felon counts on the ground that the underlying felony conviction had been expunged, so Schooler's right to possess firearms had been restored. The district court dismissed all nine firearms counts in a pretrial hearing held on May 6, 2024. On May 8, 2024, the State filed an amended complaint/information that omitted the nine counts of criminal possession of a firearm by a convicted felon. The same day, the parties filed a signed plea agreement stating Schooler would plead no contest to one count of distribution of a controlled substance resulting in death and one count of possession of fentanyl with intent to distribute within 1,000 feet of a school. In exchange, the State agreed to dismiss the remaining counts and the parties agreed to recommend a 195-month controlling prison sentence. The parties anticipated a criminal history score of G.

The district court held a plea hearing on the same day. Schooler was represented at the hearing by his counsel, Jillian Waesche. The district court walked Schooler through the plea agreement as follows:

"THE COURT: Okay. So according to this, you're going to enter a plea of no contest to Count 1, which is distribution of a controlled substance causing death, a Severity Level 1 person felony and no contest to Count 2, possession of Fentanyl with intent to distribute within a thousand feet of a school, a Drug Severity Level 1 felony on the amended complaint information. The other counts will be dismissed upon the Court's acceptance of your pleas.

. . . .

"Is that a fair summary of the plea agreement you have with the State?

"[SCHOOLER]: "Yes, sir."

The district court then inquired about Schooler's ability to understand his decision to enter a plea and waive his right to a jury trial. Schooler stated that he understood the charges against him, the terms of the plea agreement, his rights, potential sentences, and that he was satisfied with his counsel. The district court then took the pleas as follows:

"THE COURT: Okay. So as to Count 1, which alleges distribution of a controlled substance causing death, a Severity Level 1 felony—person felony, alleged to have occurred on or about June 15th, 2023, in Geary County, Kansas; how do you plead?

"[SCHOOLER]: No contest.

"THE COURT: As to Count 2, which alleges unlawful possession of a controlled substance, Fentanyl, with the intent to distribute within 1,000 feet of school property, a Drug Severity Level 1 felony, alleged to have occurred on or about June 15th, 2023, in Geary County, Kansas; how do you plead?

"[SCHOOLER]: No contest."

The State recited an extensive factual basis supporting the pleas, covering over five pages of the hearing transcript. The factual basis described in detail how Schooler provided pills containing fentanyl to M.J., who immediately after ingesting the pills "was transported to the hospital from the apartment where she unfortunately passed away on or about June 15th of 2023. . . . Fentanyl was found in Maggie's system." The factual basis described how law enforcement executed a search warrant on Schooler's home and found

3

oxycodone and fentanyl within 1,000 feet of school property. The district court found the pleas freely, voluntarily, and intelligently made and accepted them.

On July 22, 2024, the presentence investigation (PSI) report was filed and showed that Schooler had a criminal history score of E. On the same day and before sentencing, Schooler moved to withdraw plea alleging that his plea counsel provided unspecified erroneous information to him, that the erroneous information contributed to his decision to enter the pleas, and that manifest injustice could result if the motion was denied. Another motion to withdraw plea was later filed for Schooler by different counsel. This motion alleged "there is a mistake of fact as to evidence regarding whether the drugs found in his vehicle at his home are within . . . 1,000 feet of a school" and "Mr. Schooler believes he was misinformed about the strength of the evidence against him and the ability of the State to prove some of the elements of the offenses."

The district court held a hearing on the motion on October 21, 2024. Schooler testified first. When asked why he believed the plea agreement should be set aside, Schooler responded, "I mean, the plea—I mean, I went with the plea because of the amount of the sentence time, which would change after the dismissals happened, but the dismissal didn't happen until that day, but at the same time." Schooler elaborated:

> "Right. Facing that amount and—yes, the amount of sentence from the drug charge was right at about the same time as what she had, you know, informed me of what the plea agreement was. Because we had an understanding that we possibly would beat the—could possibly beat the first charge, which was the main change that they, you know, wanted to, you know, try to have me take a plea for, the State that is.
> "So understanding that, you know, I was—that's what led me to—to make that agreement. And then come to find out later that it was less time for the drug sentence. So I wouldn't have taken that plea, you know, doing that with it being less of—of a charge, you know, for the drug charge offense."

4

Schooler's testimony shifted back and forth between topics while his counsel tried to keep him on track, but eventually the district court interjected to address whether the criminal possession of a firearms counts had been dismissed before Schooler entered his pleas, which Schooler appeared to call into question at times during his testimony. The district court concluded at that point that "when the plea agreement was entered into there was no doubt those firearms charged had been dismissed."

Schooler's counsel then asked if it was Schooler's position that he only entered the plea because he thought the possible sentence he was facing still included the firearms charges, to which Schooler responded, "Yes, that would be one reason." Schooler's counsel asked what the other reasons were, to which Schooler responded, "The other reason would be the school zone. That within a thousand feet where we have the—the thousand feet is outside of the property, which would also reduce sentencing charges." Schooler believed he had photographs proving his garage where the fentanyl was found was not within 1,000 feet of a school. Schooler spoke to Waesche about the evidence but claimed he still entered the plea because he did not receive his evidence until later.

Schooler's counsel reiterated, "So I want to be clear, the basis—you're wanting this Court to allow you withdraw your plea because you believe this plea was—you were misled in entering into this agreement?" Schooler responded, "Correct." Schooler's counsel clarified, "And you were misled based on you believe that the second—Count Number 2 could not be proven within a thousand feet of a school?" Schooler again agreed. Schooler's counsel finished, "And then the other matter is that you believed you were facing a larger sentence than you were, in fact, facing?" Schooler again agreed.

Waesche was the only other witnesses to testify. Waesche met with Schooler eight or nine times and claimed to have discussed with Schooler defenses, strengths, and weaknesses in his case. Waesche testified that after Schooler entered his pleas, he contacted her claiming to have conducted an independent investigation through some

friends of his about the distance from his property to school property. Schooler's friend had measured the distance and that measurement was more than 1,000 feet. Waesche's investigator then checked with the measurement and based on his findings, Waesche concluded that "there was an argument that the garage was more than a thousand feet [from school property] and the car was found in the garage with the Fentanyl." Waesche agreed it was possible to have "beaten" the distance element if the jury believed the new estimation and believed "it was the garage that was the edge of the property line and not the house" because the house was within 1,000 feet of the school property. Waesche reiterated that she did not discover this information until after Schooler entered his pleas.

After the evidence was presented, the district court asked Schooler's counsel if Schooler's claim had 3 parts: (1) that Schooler discovered after his plea that his garage was not within 1,000 feet of school property; (2) how the criminal possession of a firearm charges affected the plea or possible prison time; and (3) the PSI report indicating a greater criminal history score than anticipated. Schooler's counsel agreed that was a fair summary of Schooler's claims. The district court took the matter under advisement.

The district court issued a written decision on October 30, 2024. Ostensibly referring to the distribution of fentanyl causing death count, the district court found that "Schooler did not offer any concerns about the homicide conviction." The district court also found that "Schooler is not claiming he found evidence that showed he did not kill [M.J.] by [distributing] a controlled substance to her." The district court found that Schooler knew the firearms counts had been dismissed before entering a plea simply because the district court "[wa]s certain" it dismissed the possession of a firearm counts before it addressed the plea agreement with Schooler.

The district court found that Waesche did not misappraise Schooler about the maximum sentence because Waesche advised Schooler that he was subject to a maximum of 39 years in prison, which the district court found to be the correct estimation for a

criminal history E, although the district court questioned how Waesche arrived at that number given that she thought Schooler would have a criminal history of G. On the potential exculpatory evidence from Schooler's friend, the district court found that, although it had no plea hearing transcript at the time, it would have inquired of Schooler about things like whether Schooler believed he had possible defenses or whether he thought the State could prove its case beyond a reasonable doubt. If Schooler had responded abnormally, the district court would have "engaged in more questioning on that issue or terminated the plea hearing without making a finding of guilt."

The district court then walked through the three-prong test in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district court found that Schooler had competent counsel because he received a "tremendous benefit of his bargain" by getting the State to recommend a 195-month prison sentence for "a scored offense that has a standard sentence of 234 months" and "he got the State to recommend that the sentence for the level 1 drug offense be concurrent to the sentence for the homicide." Essentially, the district court found that Waesche had done a good job negotiating the plea agreement.

The district court found that Schooler presented no evidence that he was coerced or intimidated to enter a plea. As to whether Schooler was misled to enter a plea or whether he fairly and understandingly made the plea agreement, the district court found that Schooler did not prove by a preponderance of the evidence at the motions hearing that the fentanyl was outside of 1,000 feet from school property and that the State gave a sufficient factual basis at the plea hearing to justify a guilty finding. The district court concluded that Schooler's testimony was not credible and that it appeared during the motion hearing that "he was continually trying to add basis for why he should be able to withdraw from the plea agreement." The district court continued, "Mr. Schooler is just having second thoughts, and second thoughts are not a basis to allow a Defendant to withdraw from a plea agreement." The district court denied Schooler's motion.

7

Before sentencing, Schooler moved for a durational departure on the grounds that his criminal history score was higher than expected when he entered his pleas and because he accepted responsibility for his conduct by entering the pleas. On November 21, 2024, the district court granted Schooler's motion for a durational departure and sentenced him to a controlling term of 195 months' imprisonment consistent with the plea agreement. Schooler timely appealed the district court's judgment.

*Did the district court err in denying Schooler's motion to withdraw plea?*

Schooler's sole claim on appeal is that the district court erred in denying his motion to withdraw plea. Schooler's main argument is that the district court abused its discretion by not addressing all the arguments he made below. Schooler points to the district court's finding that he "is not claiming he found evidence that showed he did not kill [the victim] by distributing a controlled substance to her" and argues that he, in fact, did make that argument below. Schooler claims he did not understand he was pleading no contest to the charge of distribution of a controlled substance causing death. He points to testimony at the motions hearing that he believed he "could possibly beat the first charge." He argues it is reasonable he did not understand he was pleading no contest to this charge given the "fluid and fast-paced nature of these proceedings."

The State argues that Schooler failed to preserve his primary claim about not knowing he was pleading no contest to the distribution causing death count by not raising it below. Alternatively, the State argues the district court did not abuse its discretion by denying Schooler's motion to withdraw plea.

Appellate courts review a district court's decision to deny a motion to withdraw a guilty or no contest plea for an abuse of discretion. See *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on

8

an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). The party claiming an abuse of discretion bears the burden of showing it. See *State v. Davisson*, 303 Kan. 1062, 1065, 370 P.3d 423 (2016).

"A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 22-3210(d)(1). When determining whether a defendant has demonstrated good cause to withdraw their plea, a district court generally looks to the following three factors from *Edgar*, 281 Kan. at 36: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. These factors, which establish viable benchmarks for the district court when exercising its discretion, should not be applied mechanically to the exclusion of other factors that might exist in a particular case. *Bilbrey*, 317 Kan. at 62-63.

The State argues that Schooler failed to preserve his primary claim about not knowing he was pleading no contest to the distribution causing death count because he did not make this argument below. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Neither of Schooler's motions to withdraw plea specified a claim that he did not understand he was pleading no contest to the distribution of a controlled substance causing death count. The only reference to this count in Schooler's testimony at the hearing was his statement that he believed he "could possibly beat the first charge."

Schooler's testimony at the hearing on his motion to withdraw plea was sometimes disjointed and difficult to follow. Schooler's testimony shifted back and forth between topics while his counsel tried to keep him on track. At the close of the evidence at the hearing, Schooler's counsel agreed with the district court that Schooler's claim had 3 parts: (1) that Schooler discovered after his plea that his garage was not within 1,000 feet

9

of school property; (2) how the criminal possession of a firearm charges affected the plea or possibly prison time; and (3) the PSI report indicating a greater criminal history score than anticipated. We cannot fault the district court for failing to address a claim that Schooler did not know he was pleading no contest to the distribution causing death count because Schooler did not meaningfully make this argument in district court.

Still, Schooler's overarching claim on appeal is that the district court abused its discretion in denying his motion to withdraw plea. This claim is preserved for appeal. To the extent Schooler is now trying to argue that he did not understand he was pleading no contest to the distribution causing death count, this argument is contradicted by the record on appeal. The plea hearing transcript reflects that the district court walked Schooler through the plea agreement and Schooler stated he understood he was pleading no contest to distribution of a controlled substance causing death. Schooler stated that he understood the charges against him, the terms of the plea agreement, his rights, potential sentences, and that he was satisfied with his legal counsel. The State recited an extensive factual basis supporting the plea to the distribution causing death count. It described in detail how Schooler provided pills containing fentanyl to M.J., who, immediately after ingesting the pills, "was transported to the hospital from the apartment where she unfortunately passed away on or about June 15th of 2023." To the extent Schooler now argues on appeal that he did not understand he was pleading no contest to distribution of a controlled substance causing death, we find this argument to be baseless.

As for Schooler's overarching claim that the district court abused its discretion in denying his motion to withdraw plea, like the district court below, we evaluate the claim by considering the *Edgar* factors. The district court found that Schooler was represented by competent counsel. This finding is supported by the record and by Waesche's testimony, which the district court found credible. Waesche testified that she discussed the charges with Schooler and that he understood the strengths and weaknesses of his case. She also explained the maximum sentence Schooler was facing on the charges

subject to the plea. Waesche acknowledged that Schooler's friends conducted measurements that possibly disputed whether the drugs found on Schooler's property were located within 1,000 feet of school property. Waesche reiterated this information was not provided until after the plea hearing. The district court found that Waesche had done a good job negotiating the plea agreement on Schooler's behalf.

The record supports the district court's findings that Schooler was not misled, coerced, mistreated, or unfairly taken advantage of and that the plea was fairly and understandingly made. Again, the plea hearing transcript reflects that Schooler understood the charges against him, the terms of the plea agreement, his rights, potential sentences, and that he was satisfied with his counsel. As for the discovery that the garage was not within 1,000 feet of school property, the district court found that Schooler did not prove that claim by a preponderance of the evidence at the motions hearing. The district court found that Schooler knew the firearms counts had been dismissed before Schooler entered his pleas on the other charges. As for any mistake about the criminal history score, the district court ultimately followed the plea agreement and granted Schooler's motion for a durational departure. The district court found that Schooler's testimony was not credible and that he was simply having second thoughts about his plea agreement. We do not make credibility findings or reweigh the evidence presented to the district court.

The district court properly conducted an evidentiary hearing on Schooler's motion to withdraw plea and its findings are supported by the record and the transcript of the hearing. Based on the record, we conclude Schooler has failed to show the district court abused its discretion in denying Schooler's motion to withdraw plea.

Affirmed.